[No. G041642. Fourth Dist., Div. Three. May 19, 2009.]

KEITH R., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
H.R., Real Party in Interest.

## COUNSEL

William J. Kopeny & Associates and William J. Kopeny for Petitioner.

No appearance for Respondent.

Law Offices of Patrick A. McCall, Patrick A. McCall and Marietta E. Raqueno for Real Party in Interest.

## OPINION

**THE COURT.**[*]—We issue a peremptory writ because the family court erroneously has applied the "changed circumstances" standard rather than the "best interest" rule to a move-away order in a child custody case when there

[*]Rylaarsdam, Acting P. J., Fybel, J., and Ikola, J.

has been no final judicial custody determination within the meaning of *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 258 [109 Cal.Rptr.2d 575, 27 P.3d 289] (*Montenegro*). A domestic violence order under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.)[1] is not a permanent custody determination. While it establishes a rebuttable presumption concerning the burden of proof, it does not remove the central element of any initial custody determination: What is in the "best interest" of the minor child based on *all* the circumstances?

In making this initial custody determination, the family court should give the parties an opportunity to be meaningfully heard, and should not arbitrarily deprive either parent from offering pertinent evidence bearing on the child's best interest, including evidence regarding the harm that may result from disruption of established patterns of care and emotional bonds.

I

Petitioner Keith R. (Father) and real party in interest H.R. (Mother) were married in mid-2004. B.R. (Daughter) was born in the fall of 2005.[2]

After Father filed for divorce in September 2006, Mother asserted domestic violence allegations against Father, and requested sole custody of Daughter. Following an investigation and a hearing, the court (Judge Claudia Silbar) denied Mother's requests. In February 2007, the court (Judge Pollard) entered an order granting both parents joint legal and physical custody, and appointed a child custody evaluator, who recommended maintaining the current custody arrangements based on Daughter's parental attachments.

In early 2008, Mother sought a temporary restraining order against Father, citing new allegations that he had stalked and was spying on her, and was seen by a police officer parked outside Mother's apartment complex late at night.[3]

---

[1] All statutory references are to the Family Code unless otherwise indicated.

[2] To preserve the minor child's privacy while allowing researchers and others to track and differentiate appellate opinions, we identify petitioner by his first name and last initial, and the other parties by their first and last initials. In so doing, we follow the approach suggested by the court in *In re Edward S.* (2009) 173 Cal.App.4th 387, 392, footnote 1 [92 Cal.Rptr.3d 725].

[3] While the officer testified that his encounter was several months before the domestic violence hearing, Father offered documentary evidence that it actually happened one year earlier. He further challenged the accuracy and completeness of other evidentiary findings in the domestic violence order, but that matter is not before us. Both parties agree, as Father characterizes it, that "the judge's domestic findings were the engine that drove the trial court to its conclusions on both custody and move away . . . ."

On May 21, 2008, following several hearings on the domestic violence allegations, the court issued a domestic violence order against Father for "harassment and stalking." The court ordered Father to have no contact with Mother directly or indirectly, other than through counsel, and directed that Mother have sole legal and physical custody of Daughter. Father was required to participate in a 52-week batterer's intervention program, and was restricted to four hours monitored visitation per month, pending further court order.

The court thereupon proceeded to the custody phase, conducting hearings episodically for seven days in June and October of 2008 and January 2009. The court recognized the father-daughter attachment, stating "I don't have a closed mind about this. I think that this father is a very loving and caring father to this little girl. And I think this little girl is very attached to her father. And I want to make sure that that relationship is a healthy one." Despite this evidence regarding Father's strong relationship with Daughter, the court expressed the view that "[t]here is no change in custody until all 52 weeks of the batterer's intervention program are completed."

On January 27, 2009, the court issued a move-away order permitting Mother to move away with Daughter to Arizona, where the maternal grandmother lived. Father was given unmonitored visitation on alternate weekends. The court, citing *In re Marriage of Burgess* (1996) 13 Cal.4th 25 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*), determined that Father had failed to show changed circumstances. As the court earlier observed, "the burden lies with [Father] to show that . . . there is a detriment to the child. Not that it's in her best interest but that there is a detriment to the child."

The January 27 order effectively concluded the custody trial. The court found that Mother "has sole legal and sole physical custiody . . . ." Mother's counsel stated "he will be submitting a judgment on Wednesday." The court set the next hearing for mid-June in connection with Father's request for extended visitation.

Father's writ petition asks us to direct the family court to vacate the move-away order, and to conduct a "proper" custody trial before a different judicial officer.

We issued a temporary stay, and directed the parties to submit additional briefing.

## II

■ When there are competing parental claims to custody, the family court must conduct an adversarial proceeding and ultimately make an award that is in "the best interest of the child." (§ 3040, subd. (b).) The purpose is to maximize the child's opportunity to develop into a stable, well-adjusted adult. The child's welfare is paramount and the "overarching concern." (*Montenegro, supra*, 26 Cal.4th at p. 255.) Relevant factors include the child's health, safety and welfare, the nature and contact with the parents, and any history of abuse by one parent against the child or other parent. (§ 3011.) And the so-called "friendly parent" provision requires the court to consider "which parent is more likely to allow the child frequent and continuing contact with the noncustodial parent . . . ." (§ 3040, subd. (a)(1).)

■ Once there has been a final judicial determination regarding the best interest of a child, the dual goals of judicial economy and protecting stable custody arrangement preclude a de novo examination. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486] (*Burchard*).) This rule is based on principles of res judicata. (*Ibid.*) A party seeking to modify a final custody order must show a significant change of circumstances, such as to indicate that a different custody arrangement would be in the child's best interest. (*Burgess, supra*, 13 Cal.4th at p. 38.) And, where sole legal and physical custody has been awarded to one parent after a contested custody dispute, the noncustodial parent is not necessarily entitled to an evidentiary hearing. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956 [38 Cal.Rptr.3d 610, 127 P.3d 28].)

■ These principles do not apply to interim custody orders, which are not intended to be final judgments as to custody. "The best interest analysis is used when making a permanent custody determination initially." (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996 [20 Cal.Rptr.3d 522] (*Ragghanti*).) In such situations, the family court must look to *all* of the circumstances bearing on the best interests of the minor child before devising a parenting plan. (*Burgess, supra*, 13 Cal.4th at pp. 31–32; see also *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1089–1092 [12 Cal.Rptr.3d 356, 88 P.3d 81]; *Montenegro, supra*, 26 Cal.4th at p. 258.)

### A

The family court based its move-away order upon the fact that Mother had "sole legal and sole physical custody" of Daughter because of a presumption arising from the domestic violence order. As a result, the court, applying the

changed circumstances standard, held that Father had failed to prove that a move away would pose a significant detriment to Daughter. The court made no determinations regarding Daughter's best interest.

The court used the wrong legal standard to resolve Mother's relocation request. The changed circumstances rule articulated in *Burchard* and *Burgess* does not apply because there has not yet been a final judicial custody determination. Neither the May 21, 2008 nor January 27, 2009 orders constitute such a final order. "Child custody proceedings usually involve fluid factual circumstances, which often result in disputes that must be resolved before any final resolution can be reached." (*Montenegro, supra,* 26 Cal.4th at p. 258 [holding that court custody orders do not constitute final judicial custody determination].) At most, there is only an interim custody order, which was entered following the domestic violence finding, and which has since been substantially modified. (*Id.* at p. 259; *Ragghanti, supra,* 123 Cal.App.4th 989 [applying best interest analysis in move-away case despite mother's evidence that child primarily lived with her and would suffer no detriment in any relocation]; *In re Marriage of Richardson* (2002) 102 Cal.App.4th 941 [126 Cal.Rptr.2d 45] [applying best interest test in move-away case where parties only stipulated to an initial custody order].)

B

Mother argues that the existing domestic violence order entitles her to relocate out of state unless Father shows that the move would be detrimental to Daughter. According to Mother, "a Restraining Order After Hearing which is due to expire in five years was issued giving [Mother] sole legal and sole physical custody of the minor child. . . . In particular, if a parent has been awarded sole legal and physical custody of a child, a trial court may deny the noncustodial parent's request to modify custody without holding a hearing . . . ."

 We disagree. A domestic violence order is *not* the same as a final judicial custody determination. To the contrary, a domestic violence finding in a family law case changes the burden of persuasion as to the best interest test, but it does not limit the evidence cognizable by the court, and it does not eliminate the best interest requirement. (§§ 3020, subd. (a), 3044, subd. (b)(1).)[4]

---

[4] Section 3044, subdivision (a) establishes a rebuttable presumption against custody to a domestic violence perpetrator. It provides, in pertinent part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child . . . within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who

Domestic violence orders are designed to prevent the recurrence of broadly defined acts of "abuse," against victims, including former or separated spouses or cohabitants, and to resolve their underlying causes. (§§ 6211, subds. (a), (b), 6220.) They are broader than civil harassment orders, and do not require as high a burden of proof. They may issue with or without notice. (§ 6300.) The focus understandably is upon the victim.

■ The section 3044 presumption, however, does not change the best interest test, nor supplant other Family Code provisions governing custody proceedings. This presumption may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent. (§ 3044, subd. (b)(1).) Nor does the statute establish a presumption for or against joint custody; again, the paramount factor is the child's health, safety and welfare. (§§ 3020, subd. (a), 3040, subd. (b).) And where the section 3044 presumption has been rebutted, there is no statutory bar against an award of joint or sole custody to a parent who was the subject of the order.[5]

This is particularly important in move-away cases, which are among the most serious decisions a family court is called upon to make. Because an out-of-state relocation will deprive one parent of the ability to have frequent and continuing contact with the children, the competing claims must be considered calmly and dispassionately, and only after the parties have been afforded the opportunity to be "meaningfully heard." (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1119–1120 [43 Cal.Rptr.3d 575] (*Seagondollar*).)

---

has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence."

[5] Section 3044, subdivision (b) lists seven factors for rebuttal. It provides: "In determining whether the presumption set forth in subdivision (a) has been overcome, the court shall consider all of the following factors: [¶] (1) Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child. In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040, may not be used to rebut the presumption, in whole or in part. [¶] (2) Whether the perpetrator has successfully completed a batterer's treatment program . . . . [¶] (3) Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate. [¶] (4) Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate. [¶] (5) Whether the perpetrator is on probation or parole, and whether he or she has complied with the terms and conditions of probation or parole. [¶] (6) Whether the perpetrator is restrained by a protective order or restraining order, and whether he or she has complied with its terms and conditions. [¶] (7) Whether the perpetrator of domestic violence has committed any further acts of domestic violence."

■ The January 27 move-away order terminated the custody trial without affording Father an opportunity to meaningfully rebut the section 3044 presumption. The court focused upon one of the listed statutory factors in rebutting the presumption: whether he had completed the 52-week batterer's program. This was a physical impossibility because only 32 weeks had elapsed since the court directed him to attend. Nonetheless, in concluding the custody proceedings on January 27, the court found "that Father has not met his burden as to [section] 3044."[6]

There are important policy reasons why domestic violence orders should not be treated as the functional equivalent of final judicial custody determinations. Domestic violence orders often must issue quickly and in highly charged situations. The focus understandably is on protection and prevention, particularly where the evidence concerning prior domestic abuse centers on the relationship between current or former spouses. Treating domestic violence orders as de facto final custody determinations would unnecessarily escalate the issues at stake, ignore essential factors (such as the children's best interest) and impose added costs and delays. It also may heighten the temptation to misuse domestic violence orders for tactical reasons.

It is true that Father, given the findings accompanying the domestic violence order, cannot rely on the statutory preference for "frequent and continuing contact" with both parents. (§§ 3020, subd. (b), 3044, subd. (b)(1).)[7] But while Father may have lost his ability to cite this statute, Daughter certainly did not lose her right to have a meaningful relationship with both parents. The minor child's best interests must remain at the forefront of the family court's considerations on custody in determining whether the section 3044 presumption has been rebutted.

---

[6] Nonetheless, the court's January 12 minute order states that Father had successfully completed more than 30 of the 52 weeks of the batterer's treatment program, and the court "finds the petitioner is in compliance . . . ."

[7] Section 3020 states, in pertinent part, that "[t]he Legislature finds and declares that it is the public policy of this state to assure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, or ended their relationship . . . ." (§ 3020, subd. (b).)

Section 3044, subdivision (b)(1) provides, in pertinent part: "In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040, may not be used to rebut the presumption, in whole or in part."

## III

██ A peremptory writ is proper to resolve this purely legal dispute in an area where the issues of law are well settled. Father prayed for a peremptory writ, and Mother asserted no objection in her 42-page response. (Code Civ. Proc., § 1008; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1240 [82 Cal.Rptr.2d 85, 970 P.2d 872].) There is a particular need to accelerate the writ process in child custody disputes where children grow up quickly and have immediate needs. Father's entitlement to relief from the erroneous changed circumstance standard is so obvious that plenary consideration of the issues is unnecessary. (*Id.* at p. 1241.) Accordingly, we will grant the petition for writ of mandate in the first instance.

A final word about the proceedings on remand, which require a new trial on permanent custody and move-away. It is particularly critical that Father, as the party bearing the burden of persuasion under the section 3044 presumption, have the opportunity to introduce evidence pertinent to the best interests of the child. This includes evidence about the nature of Father's relationship with Daughter, his ability and willingness to care for her, the extent, if any, to which he poses a risk of physical and emotional abuse, his receptivity to being a "friendly parent," and Daughter's needs for more than marginalized parental relationships. Before reaching any final custody decision, the court should conduct a detailed review of the evidence presented at trial and carefully weigh *all* of the relevant factors required by section 3044.

This custody proceeding involves disputed facts, and we do not intend, by our recitation of the procedural history or legal discussion, to dictate any particular outcome. That is a matter in which the family court is invested with wide discretion to choose a parenting plan that is in the best interests of the child, after looking to all the circumstances. (*Montenegro, supra*, 26 Cal.4th at p. 255; § 3040, subd. (b).) As we expressed in *Seagondollar*, we are confident that the court "will impartially follow the procedures and rules governing family law matters to ensure a decision is reached after giving both sides an opportunity to be meaningfully heard." (*Seagondollar, supra*, 139 Cal.App.4th at p. 1120.)[8]

## IV

██ We decline Father's request to exercise our discretion to order that a different bench officer conduct the proceedings. (See *Hernandez v. Superior*

---

[8] Nothing in this opinion, including the disposition, is intended to restrict that portion of the January 27 move-away order, and any subsequent orders, insofar as they may have relaxed or revised Father's visitation rights, and removed the monitor. The issue of visitation is outside the purview of this writ.

*Court* (2003) 112 Cal.App.4th 285, 303 [4 Cal.Rptr.3d 883] [appellate discretion to disqualify "should be exercised sparingly"].)

On remand, however, Father, may file a new peremptory challenge to the family law judge under Code of Civil Procedure section 170.6, subdivision (a)(2). "A [litigant] is entitled to timely demand a new judge if a new trial is granted as part of writ relief." (*Overton v. Superior Court* (1994) 22 Cal.App.4th 112, 115 [27 Cal.Rptr.2d 274].) This procedure is designed to avoid perceived bias against a petitioner from a trial judge whose judgment or order has been reversed on appeal or writ, and who will be called upon to reexamine a factual or legal issue that was in controversy in the prior proceeding in a new trial. (See discussion in *C.C. v. Superior Court* (2008) 166 Cal.App.4th 1019 [83 Cal.Rptr.3d 225].) A retrial "is a ' "reexamination" of a factual or legal issue that was in controversy in the prior proceeding.' " (*First Federal Bank of California v. Superior Court* (2006) 143 Cal.App.4th 310, 314 [49 Cal.Rptr.3d 296] [remand on issue of attorney fees constitutes a retrial for purposes of peremptory challenge]; *Stubblefield Construction Co. v. Superior Court* (2000) 81 Cal.App.4th 762, 766 [97 Cal.Rptr.2d 121] (*Stubblefield*) ["new trial" provision of Code Civ. Proc., § 170.6 includes first trials on a factual issue following reversal of summary judgment].) It requires more than a remand for the performance of ministerial acts. (*C.C. v. Superior Court, supra*, 166 Cal.App.4th at p. 1022.)

We find nothing in the January 27 order to show the court's intent to hear further evidence on custody. To the contrary, the court determined that Father failed to rebut the section 3044 presumption and awarded sole legal and physical custody to Mother.

Mother contends that we should avoid a new trial because "an inordinate amount of time (not including the several hearings on domestic violence)" already has been devoted to custody. She suggests that we instead direct the same family law judge "to pick up where it left off . . . as opposed to starting a new trial on the same issue."

Father does not lose his right to a peremptory challenge simply because it may be more efficient to keep the same judicial decision maker. The family court having erred in the "crucial decision of law" requiring a reexamination on remand, Father is entitled to assert a peremptory challenge at a new trial without having to show actual prejudice. (*Stubblefield, supra*, 81 Cal.App.4th at p. 766.)

### DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of January 27, 2009, including supporting factual findings, insofar as it grants sole custody to Mother and permits her to move away to the State of Arizona with the minor child. Respondent court shall conduct a new trial on custody in accordance with this opinion before issuing a final or permanent judicial custody determination. The temporary stay shall be lifted upon the finality of this opinion.

The parties shall bear their own costs in conjunction with this writ proceeding.

On June 5, 2009, the opinion was modified to read as printed above.