Filed 6/30/14  Torres v. Superior Court CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MATTHEW C. TORRES,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>        Respondent;<br><br>CYNTHIA COX,<br><br>        Real Party in Interest. | H041054<br>(Santa Clara County<br>Super. Ct. No. 1-13-CP020578) |

In this child custody dispute, petitioner Matthew C. Torres (father) seeks extraordinary relief from a temporary custody order allowing real party in interest Cynthia Cox (mother) to move to Michigan with father and mother's five-year-old daughter, Alyssa.  The order, which was issued before any final custody determination had been made, permits mother to take Alyssa to Michigan "temporarily," pending the completion of a child custody evaluation pursuant to Evidence Code section 730.  The temporary custody order expressly contemplates a later court determination as to whether a permanent move is in Alyssa's best interest.

Father seeks writ relief from the trial court's order, arguing that the court committed procedural and substantive reversible errors.  For the reasons stated below, we agree that the court deprived father of an opportunity to be meaningfully heard before

granting mother's "move-away" request. Therefore, we will issue a peremptory writ in the first instance vacating the trial court's order.

## I.    BACKGROUND

Alyssa was born in 2009. While father and mother never married, they lived together with Alyssa until July 2013. During that time, father worked and mother stayed at home, except for a brief period during which she worked part time at night. On January 14, 2013, while the family was still living under one roof, father filed a parentage action. He sought not only to establish his paternity, but also to obtain a child abduction prevention order barring mother from taking Alyssa to Michigan, as she allegedly had threatened to do on numerous occasions. The court issued a temporary protective order prohibiting Alyssa's removal from California.

The court entered a stipulated parentage judgment establishing mother and father as Alyssa's parents on February 27, 2013. The court also ordered that mother and father sign up for orientation and mediation with family court services.

Mother and Alyssa moved in with some of mother's friends on July 23, 2013. Mother did not inform father she would be moving out that day, though he had served her with an eviction notice. He feared she had taken Alyssa to Michigan, where mother's family lives.

In early August 2013, mother filed an ex parte application for a restraining order against father under the Domestic Violence Protection Act. (Fam. Code, § 6200 et seq.) The court granted the requested temporary restraining order, which barred father from seeing Alyssa, pending a hearing. Shortly thereafter, the court modified the temporary restraining order to permit supervised visitation between father and Alyssa. On August 20, 2013, father filed his own application for a Domestic Violence Protection Act restraining order against mother. Among other relief, father sought an order barring mother from taking Alyssa outside the Bay Area. The court granted father's request pending a hearing. On August 28, 2013, the court eliminated the requirement that

2

father's visitation with Alyssa be supervised and ordered that father have Alyssa on Wednesday evenings and every Friday at 5:30 p.m. through Saturday at 5:30 p.m.

In October 2013, the parties stipulated to the dismissal with prejudice of their domestic violence temporary restraining orders. The stipulation further provided that neither party travel outside the Bay Area with Alyssa.

Mother first requested a "temporary" move-away order allowing her to move to Michigan with Alyssa in a December 2013 judicial custody conference statement. That request was denied because mother failed to file the requisite request for order.

On February 27, 2014, mother filed a request for order seeking sole physical custody of Alyssa and an order permitting her to move to Michigan immediately with Alyssa pending a permanent custody determination. In support of her request, mother declared that she had been unable to find employment in the Bay Area. Mother declared that she and Alyssa currently are staying with a couple mother met through her church and that she "feel[s] that we have overstayed our welcome." Mother stated that she and Alyssa could live with mother's father and stepmother in Michigan until mother is able to find a job there.

Father opposed the temporary move-away motion and requested joint legal and physical custody. He also requested a custody evaluation, including the appointment (pursuant to Evidence Code section 730) of an expert custody evaluator, and an evidentiary hearing prior to any determination regarding custody, including mother's move-away request.

The court held a hearing on mother's temporary move-away request on April 24, 2014, at the end of its short-cause calendar. The court summarized mother's declaration and then permitted father's attorney to cross-examine mother. The court likewise summarized father's declaration. The court also allowed a direct examination of father by father's attorney and cross-examination by mother, who represented herself.

3

At the end of the hearing, the court stated that it would appoint a private Evidence Code section 730 evaluator to assess the issue of permanent child custody, including the move-away issue. The court also ordered that mother could "temporarily" take Alyssa to Michigan "pending the completion of the evaluation." The court stated that its decision was "without prejudice regarding whether or not a long-term move to Michigan is in the best interest of the child."

On April 30, 2014, the court appointed a private child custody evaluator to perform a full child custody evaluation, including evaluation of the move-away issue, under Evidence Code section 730. The court set a custody settlement conference for September 25, 2014. In a written order dated May 5, 2014, the court memorialized its ruling on the temporary move-away request. Mother made plans to move to Michigan at the beginning of the summer.[1]

Father filed a petition for writ of mandamus, prohibition and/or supersedeas relief in this court on May 28, 2014, in which he sought extraordinary relief from the trial court's order. On June 3, 2014, we issued a notice pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, advising the parties that this court was considering issuing a peremptory writ of mandate in the first instance, requesting points and authorities in opposition to the petition, and allowing petitioner to reply. Having received opposition to the petition for writ of mandamus and petitioner's reply, we turn to the merits of the writ petition.[2]

---

[1] According to father, mother planned to move on June 9, 2014. Mother denies that she intended to move on that date. She does not specify when she planned to move, but states that she had purchased plane tickets to Michigan for herself and Alyssa and had scheduled elementary school tours "for the first week of our planned arrival before schools close for the summer." Evidently the planned move was imminent.

[2] Mother is proceeding in propria persona. She nevertheless " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) Father requests that we strike portions of mother's opposition that are unsupported by record (continued)

4

## II.    DISCUSSION

### *A*.    *Writ Review*

Temporary custody determinations, like the one at issue, are nonfinal, and thus not appealable.  (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 556.)  They are, however, immediately reviewable by writ.  (*Id*. at p. 565.)

"In limited situations, an appellate court may issue a peremptory writ in the first instance, without issuance of an alternative writ or order to show cause, and without providing an opportunity for oral argument."  (*Campbell v. Superior Court* (2008) 159 Cal.App.4th 635, 647; Code Civ. Proc., § 1088.)  "A court may issue a peremptory writ in the first instance ' "only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue--for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts--or where there is an unusual urgency requiring acceleration of the normal process. . . ." ' " (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1241 (*Lewis*).)

Before issuing a peremptory writ in the first instance, Code of Civil Procedure section 1088 " ' "requires, at a minimum, that . . . the parties adversely affected by the writ have received notice, from the petitioner or from the court, that the issuance of such a writ in the first instance is being sought or considered.  In addition, an appellate court, absent exceptional circumstances, should not issue a peremptory writ in the first instance without having received, or solicited, opposition from the party or parties adversely affected . . . ." ' " (*Lewis*, *supra*, 19 Cal.4th at p. 1240.)  As noted, we have complied with these procedural requirements by providing notice that this court was considering

---

citations or raise matters outside the record.  We decline that request and simply disregard unsupported contentions and references to extra-record matters.  We likewise disregard mother's second opposition, filed the day after father's reply, which she was not entitled to file and consists almost entirely of matters outside the record.

issuance of a peremptory writ in the first instance and by requesting points and authorities in opposition to the petition.

### B. *Law Governing Initial Custody Determinations and Move-Away Requests*

#### 1. *Procedural Requirements*

Whenever a party seeks to "obtain . . . a temporary or permanent custody . . . order" and custody is contested, the court is required to set the contested issues for mediation. (Fam. Code, § 3170.) "If the custody . . . dispute is not set for mediation, there can be no action taken concerning the disputed issues involving minors." (*Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653, 670.)

In the event the parties are unable to agree on custody following mediation, the court must set the matter for an adversarial hearing. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1360 (*Elkins*); Fam. Code, § 3185, subd. (a).) Where no final judicial custody determination has been made, a full evidentiary hearing is mandatory. (*Elkins*, *supra*, at p. 1360.) Family Code section 217 requires that live testimony be permitted at such a hearing unless the parties stipulate otherwise or the court makes a finding of good cause to refuse to receive live testimony.

Courts have recognized that adherence to these procedural safeguards is particularly important in cases involving move-away requests given the seriousness of a "custody decision allowing one parent to move the child[] out of the state." (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1119 [such a decision "should not be made 'in haste' "]; *id.*, at p. 1120 [but " 'in a calm, dispassionate manner and only after the parties have had an opportunity to be meaningfully heard' "]; *In re Marriage of McGinnis* (1992) 7 Cal.App.4th 473, 479 [on move-away request, "the parties must be given adequate notice, time for meaningful mediation, and time to marshall evidence"], disapproved of on another ground by *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 38, fn. 10.)

6

## 2. *Substantive Considerations*

"The trial court is always bound to make a custody decision based upon the child's best interest." (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996.) "In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity." (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.)

When the court makes its initial permanent custody determination, it has " 'the widest discretion to choose a parenting plan that is in the best interest of the child.' " (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 31, quoting Fam. Code, § 3040, former subd. (b), now subd. (c).) At that stage, the court "must look to *all the circumstances* bearing on the best interest of the minor child." (*In re Marriage of Burgess*, *supra*, at pp. 31-32.) Where, at the time of the initial custody determination, one parent expresses an interest in "immediate or eventual relocation," the "effects of such relocation on [the child's] rights or welfare" are among the circumstances the court is bound to consider. (*Id*. at p. 32.) Simply put, in a move-away case where the court is rendering a permanent physical custody order for the first time, the court makes its decision based on the best interests of the child under all the circumstances, including the effects of one parent's relocation.

### C. *Law Governing Temporary Custody Determinations*

The Family Code authorizes courts to make temporary custody determinations. (See Fam. Code, § 3170, subd. (a) [referencing "temporary" "custody or visitation order[s]"]; *id*., § 3060 [authorizing "[a] petition for a temporary custody order"].) Such a temporary order is "made pendente lite with the intent that it will be superseded by an award of custody after trial." (*Lester v. Lennane*, *supra*, 84 Cal.App.4th at p. 559.) Like final custody determinations, temporary custody orders must be based on "what would best subserve the welfare of the child." (*Chichester v. Chichester* (1964) 228 Cal.App.2d 491, 499.)

7

*D*.    *Analysis*

Father argues the temporary move-away order warrants reversal on procedural grounds.  We agree.

As discussed above, certain procedural safeguards generally apply to move-away requests made before a final judicial custody determination has been made, as was the case here.  Specifically, mediation of the contested move-away issue and a full evidentiary hearing are required.  (*Elkins*, *supra*, 41 Cal.4th 1337; *In re Marriage of McGinnis*, *supra*, 7 Cal.App.4th at p. 478; Fam. Code, §§ 3170, 3185.)  Where (as here) the court has appointed a custody evaluator under Evidence Code section 730, the requisite evidentiary hearing must involve testimony by the appointed expert.  (Evid. Code, § 730 [authorizing court to appoint expert "to testify as an expert at the trial"].)  The court below did not adhere to these procedures.  Instead, without ordering mediation on the disputed move-away issue, the court authorized mother to move-away "temporarily" following an abbreviated hearing and *then* appointed a custody evaluator, apparently with the intent to hold further proceedings once the evaluator completes his report.

The question presented by father's petition is whether a court can--at least in the short term--circumvent the usual procedural safeguards applicable to move-away determinations where there is no existing permanent custody order by issuing a "temporary" order.  Absent exigent circumstances, the answer is "no."

Where no permanent custody determination has been made, the need for procedural safeguards is present regardless of whether a move-away order is characterized as "temporary."  With regard to final move-away orders, courts have held that procedural safeguards are necessary because such decisions "necessarily interfere[] with the [one] parent's ability to have frequent and continuing contact with" their children, making move-away decisions among " 'the most serious decisions a family law court is required to make.' " (*In re Marriage of Seagondollar*, *supra*, 139 Cal.App.4th at

p. 1119.) A temporary move-away order issued prior to any permanent custody determination may have equally serious implications, as the temporary move-away inevitably will impact the "best interests" analysis used in making the final custody determination. For example, assume Alyssa moves to Michigan with mother now. In making its final custody determination in the fall, the court will be required to consider all the circumstances bearing on Alyssa's best interest. If a temporary move-away occurs, those circumstances will include that a second cross-country move back to California would be inconsistent with Alyssa's interest in "continuity and stability." (*Ragghanti v. Reyes*, *supra*, 123 Cal.App.4th at p. 999.) Thus, while the court indicated that its order was without prejudice, in reality, any temporary move-away order places a thumb on the scale in favor of allowing a permanent move-away in the final custody order. The gravity of even a "temporary" move-away order counsels in favor of requiring the usual procedural safeguards.

"[W]e recognize that bright line rules in [child custody cases] are inappropriate: each case must be evaluated on its own unique facts." (*In re Marriage of Burgess*, *supra*, 13 Cal.4th at p. 39.) Conceivably, in some cases exigent circumstances might justify a temporary move-away order following accelerated and abbreviated procedures. But this is not such a case. Here, the record discloses no countervailing considerations that might warrant deviating from the ordinary procedures to rule on mother's move-away request without the benefit of the custody evaluator's report and a full evidentiary hearing. Mother has no job lined up in Michigan requiring her to move immediately. And while she "feels" she and Alyssa have overstayed their welcome with her church friends, there is no evidence that mother and daughter face any risk of losing their current housing. The timing of mother's move-away request supports the conclusion that it lacks urgency. Mother initially made her request in December 2013. When that request was denied for

9

procedural reasons, she waited over two months to reassert the request.[3] Given the absence of any exigent circumstances necessitating an immediate move, the court below erred by issuing a move-away order prior to the completion of mediation, the custody evaluation, and a full evidentiary hearing.

Since we reverse on procedural grounds, we do not address father's argument that the court committed substantive error, abusing its discretion by concluding that a temporary move-away was in Alyssa's best interest.

### E.    *Proceedings on Remand*

In his reply brief, father requests that, in the event we reverse the court's temporary move-away order, he be permitted to bring a peremptory challenge pursuant to Code of Civil Procedure section 170.6, subdivision (a)(2) on remand.

Code of Civil Procedure section 170.6, subdivision (a)(2) allows a peremptory challenge to be made "following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter." This appellate reversal rule has been held to apply where a new trial is granted as part of writ relief. (*Overton v. Superior Court* (1994) 22 Cal.App.4th 112, 115.) The rule "is designed to avoid perceived bias against a petitioner from a trial judge whose judgment or order has been reversed on appeal or writ." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047,

---

[3] We recognize that the court must make its final custody determination, including its final ruling on mother's move-away request, based on the assumption that mother will relocate to Michigan. (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1127 ["The court must decide de novo what physical custody arrangement would be in the child's best interests, *assuming that the requesting parent will relocate.*"].) That assumption is appropriate to prevent courts from denying move-away requests "with the goal of maintaining the status quo and/or coercing [parents] to abandon" plans to relocate. (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 23.) But we see no reason to assume--contrary to the record evidence--mother will relocate to Michigan before a final custody determination can be made following a full evidentiary hearing.

1058.)

Challenges under Code of Civil Procedure section 170.6, subdivision (a)(2) are not permitted at all " 'hearing[s] in which there is *any* potential for bias.' " (*State Farm Mutual Automobile Ins. Co. v. Superior Court* (2004) 121 Cal.App.4th 490, 498.) Rather, such challenges are permitted only where "there has been a trial, and . . . there will be a retrial." (*First Federal Bank of California v. Superior Court* (2006) 143 Cal.App.4th 310, 314.) There has "been a trial" where "the trial court's initial decision . . . 'either addressed the merits or otherwise terminated the case.' " (*Ibid.*) A "new trial" involves "a ' "reexamination" of a factual or legal issue that was in controversy in the prior proceeding.' " (*Ibid.*)

Here, there has been no trial. The court's temporary move-away order did not determine the custody and move-away issues with finality, let alone terminate the case. (Cf. *Keith R. v. Superior Court*, *supra*, 174 Cal.App.4th at p. 1058 [concluding there had been a trial for purposes of Code Civ. Proc., § 170.6, subd. (a)(2) where court's move-away order evinced no intent by the court "to hear further evidence on custody"].) Nor did the court address the merits of the issue to be decided on remand--what final custody arrangement is in Alyssa's best interest under all the circumstances, including mother's intent to relocate.

In addition, our remand does not call for a new trial, as the court will not be required to "revisit some factual or legal issue that was in controversy in the prior proceeding." (*Paterno v. Superior Court* (2004) 123 Cal.App.4th 548, 560.) At the April 24 hearing, the court considered whether a *temporary* move was in Alyssa's best interest. On remand, the court must consider a separate issue (one on which it already intended to hold a trial)--what *final* custody arrangement is in Alyssa's best interest. Accordingly, we conclude that father may not file a peremptory challenge to the family law judge under Code of Civil Procedure section 170.6, subdivision (a)(2).

11

Father also suggests that Judge Takaichi's conduct at a hearing on June 5, 2014, draws his ability to be impartial on remand into doubt.[4] At the hearing, confusion arose as to what visitation order governed given the unanticipated stay of mother's planned move. Father maintained that the court had increased his visitation at the April 24 hearing and that the court's written order, dated May 5, did not properly reflect the court's ruling. Because no copy of the April 24 transcript was readily available, the court reinstated the visitation schedule in place prior to the April 24 hearing. The trial judge invited the parties to submit the April 24 transcript to him, and announced his intent to "correct the order to reflect" the transcript if necessary. According to father, the court's resolution of the issue reduced the amount of visitation to which he is entitled.

Father characterizes the court's conduct as "punitive" and cites *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1327, in which the court ordered the trial judge disqualified under Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii). Father's contentions are irrelevant to our analysis under Code of Civil Procedure section 170.6, subdivision (a)(2). To the extent he is requesting we disqualify Judge Takaichi, we decline to do so. The hearing transcript does not suggest bias or whimsy on behalf of the court. Instead, it appears the court resolved the dispute in a reasonable manner.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its May 5, 2014 order granting mother's temporary move-away request to enter a new order denying that request and further directing the superior court to (1) set the contested custody issues for mediation and (2) hold a full evidentiary hearing once the custody evaluation is complete. The parties shall bear their own costs in this original proceeding.

---

[4] We grant father's request to judicial notice of the transcript of that hearing.

_____
                                          Premo, Acting P.J.

WE CONCUR:

_____
      Elia, J.

_____
      Mihara, J.

13