Filed 8/29/16  In re Z.G. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re Z.G., a Person Coming Under the Juvenile Court Law. | B270459 (Los Angeles County Juvenile Court No. Super. Ct. No. DK09279) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>H.H.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Juvenile Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Dismissed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

H.H. (father) appeals from the juvenile court's jurisdiction and disposition orders finding his minor daughter, Z.G., a dependent child of the juvenile court pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b), and (j),[1] and placing Z.G. "home of the parents." Father contends that the juvenile court abused its discretion in repeatedly continuing dependency proceedings, resulting in a delayed dispositional hearing. We agree with the Los Angeles County Department of Children and Family Services (the Department) that the appeal should be dismissed as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

The Department became involved with A.G. (mother), her two children (three-year-old Z.G. and six-month-old Z.A.) and Z.A.'s father, A.A., based on an allegation of domestic violence between mother and A.A.[2] Father is Z.G.'s father.

On January 26, 2015, the Department filed a section 300 petition alleging domestic violence between mother and A.A. Father's identity was unknown at that time. Mother told the Department that she only knew father as "Pookie," but he died before Z.G. was born. On that same date, the Department reported "the current whereabouts" of Z.G. and Z.A. are unknown; the juvenile court set the jurisdiction hearing for March 20, 2015.

On February 17, 2015, the Department advised the juvenile court that Z.G. and Z.A. had been located. The juvenile court ordered that they be placed in protective custody.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] Mother, A.A., and Z.A. are not parties to this appeal.

On March 6, 2015, the Department filed a first amended petition, adding the allegation that mother suffered from mental and emotional problems, placing the children at risk of harm. Mother again stated, this time in her paternity questionnaire, that the identity of Z.G.'s father was unknown. The jurisdiction hearing was set for May 4, 2015.

Mother told the Department that she may have Indian heritage, and that she became pregnant with Z.G. after "one night in Washington DC" with a man whom "she only knew by his nickname Pookie." Mother said she did not have any additional information regarding father.

The Department learned that in March 2012 mother had a child welfare case in the state of Georgia, and father was identified. The Department initiated a due diligence search for father in the state of Georgia. On April 15, 2015, the Department advised the juvenile court that father had been located in the state of Georgia.

On April 20, 2015, the Department filed a second amended petition that added the allegation that mother had physically assaulted father and father's companion in 2012 in the presence of Z.G. The Department advised the juvenile court that it had noticed Indian tribes in response to mother's identification of Indian heritage. At the April 20 hearing, the juvenile court found father to be Z.G.'s presumed father, and the Department advised the juvenile court that there remained outstanding Indian Child Welfare Act (ICWA) notice issues that would prevent the juvenile court from proceeding to disposition. The juvenile court continued the matter to May 4, 2015, and ordered an Interstate Compact for Placement of Children (ICPC) assessment of father in the state of Georgia pursuant to the request of Georgia child protective services.

On May 4, 2015, the Department advised the juvenile court that the ICPC assessment on father in the state of Georgia was still pending. The ICWA notice issues were still unresolved because responses from all of the tribes had not been received, and the paternity test related to A.A. and Z.A. was also still pending. The juvenile court therefore continued the jurisdiction and disposition hearings to June 30, 2015.

On June 30, 2015, the Department advised the juvenile court that notice to the Indian tribes was complete, and paternity results for the child Z.A. and A.A. had been

received. The Department however also advised the juvenile court that father's ICPC assessment could not be completed until Z.G. was made a dependent of the juvenile court. At the June 30, 2015, hearing, the juvenile court set the case for a mandatory settlement conference on July 20, 2015, with backup jurisdiction hearing dates of July 28 and July 29, 2015.

At the July 20, 2015, mandatory settlement conference, the parties agreed to a settlement of the jurisdiction for both children and of Z.A's disposition. However, because mother had "second thoughts" about the settlement, the juvenile court struck it and continued the matter to the back-up jurisdiction hearing date of July 28, 2015.

At the July 28, 2015, jurisdiction hearing, upon mother's request, the juvenile court conducted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. The juvenile court appointed new counsel for mother, and continued the matter to August 12, 2015.

On August 12, 2015, the juvenile court held the jurisdiction and disposition hearings, and sustained the petition pursuant to section 300, subdivisions (a), (b), and (j). The juvenile court required an update on the ICPC assessment for father, and an Evidence Code 730 psychological evaluation of mother remained outstanding. The juvenile court therefore, over the objection by father's counsel, continued the disposition hearing to September 2, 2015.

On September 2, 2015, the juvenile court conducted the disposition hearing on Z.A. and removed Z.A. from parental custody. Over the objection by father's counsel, the juvenile court continued the disposition of Z.G. to obtain an update on mother's progress regarding her case plan and father's progress regarding the ICPC assessment.

At the October 28, 2015, disposition hearing, mother's counsel requested a continuance because the Department was investigating a child abuse referral for a newborn baby of mother, and an update was required on mother's housing issues. Over the objection by father's counsel that the requested continuance would violate the statutory time requirements imposed by section 352 within which to hold the dispositional hearing, the juvenile court granted the continuance.

4

On December 2, 2015, the juvenile court held the disposition hearing related to Z.G., and placed Z.G. "home of parents" with Z.G. to live with mother because father lived in Georgia.[3] On December 14, 2015, father filed a notice of appeal, appealing "[a]ll [a]djudication findings and orders and [d]isposition orders, including case plan . . . ."

## DISCUSSION

Father's claim that the continuances of the dispositional hearing were an abuse of discretion is moot. "As a general rule, it is a court's duty to decide ""'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'"" (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717.]" (*In re N.S.* (2016) 245 Cal.App.4th 53, 58 (*N.S.*).)

Father fails to request any relief that can affect the matter in this case. Indeed, father concedes that his appeal "was rendered moot" because "the disposition of Z.G.'s case has finally occurred" and "Z.G. was finally placed 'home of parents.'" "[T]he critical factor in considering whether a dependency appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*N.S.*, *supra*, 245 Cal.App.4th at p. 60.) At this stage of this proceeding, no effective, justifiable relief can be granted father if we reverse.

In some cases, courts have exercised their discretion to review dependency challenges even where no relief could be granted directly. (See *N.S.*, *supra*, 245 Cal.App.4th at p. 62; *In re Marquis H.* (2013) 212 Cal.App.4th 718, 724.) Here, we decline to do so for several reasons. First, father provides no argument, not even one that is "highly speculative," (*In re C.C.* (2009)172 Cal.App.4th 1481, 1489) as to why he may be prejudiced in the future from the trial court's grant of the continuances here.

---

**3**      Father was deemed a non-offending parent.

Secondly, a writ of mandate was available to challenge an improper continuance. Under Code of Civil Procedure section 1086, a "writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested." (See also, *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1057.) If father believed he was aggrieved by the juvenile court's orders continuing the dependency proceedings, he had a remedy to challenge any of them pursuant to a writ of mandate. Father however did not attempt to do so.

In response to the Department's argument that father should have sought a writ of mandate, father contends that seeking a writ of mandate was not practical because "appointed counsel" had a "heavy caseload," and a "concomitant inability to prepare successive writs in many cases of excessive continuances." The record does not disclose that father's counsel had a "heavy caseload" preventing him from seeking a writ of mandate regarding the juvenile court's orders continuing the dependency proceedings. In addition, father's counsel has not established that it this is a justifiable excuse for him not to seek the writ.

Finally, trial courts have been advised of the importance of timely conducting dispositional hearings, and we see no reason on this record to address the matter again in a case otherwise moot. We dismiss the appeal.

6

**DISPOSITION**

The appeal is dismissed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


                              RAPHAEL J. *


We concur:


         KRIEGLER, Acting P.J.



         BAKER, J.


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.