Filed 2/8/21  Marriage of Cuellar CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of THERESA CUELLAR and JOSE CUELLAR. | |
| THERESA CUELLAR, Appellant, v. JOSE CUELLAR, Respondent. | F078124 (Super. Ct. No. 08CEFL05910) **OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Francine Zepeda, Judge.

Castro Law Group, Mark J. Castro, for Appellant.

Gromis & Aguirre, Kim L. Aguirre, for Respondent.

-ooOoo-

Theresa Cuellar appeals from the trial court's orders in this child custody matter. We affirm.

## FACTS AND PROCEDURAL HISTORY

Theresa Cuellar and Jose Cuellar were married and had three children: Am.C. (born in 2001), An.C. (born in 2004), and E.C. (born in 2006). Theresa filed for divorce in 2008. A judgment of dissolution of marriage was entered on June 7, 2011. It granted the parents joint legal custody and joint physical custody of the children. Jose, who lived in Manteca, was named as the primary care provider and the children primarily resided with him in Manteca. Theresa, who lived in Fresno, had the children on weekends, holidays, as well as for extended stays.

On September 2, 2016, Am.C. obtained an emergency protective order against Jose, on grounds he had slapped her and pulled her by the hair. Thereafter, on September 9, 2016, Theresa filed a request for order (RFO) requesting a temporary emergency order regarding custody and visitation and modification of the existing custody order and judgment from June 7, 2011. An ex parte temporary emergency order was granted, and a hearing was set for October 3, 2016, on Theresa's modification request.

At the hearing on October 3, 2016, the court considered Theresa's request for modification of the existing custody and visitation order. On October 4, 2016, the court issued an interim order granting Theresa sole legal custody and sole physical custody of the children. Jose was granted supervised visitation with E.C. and An.C. (Am.C. was permitted to attend the supervised visitation at her discretion). The court ordered Jose to participate in a "52-week Child Abuse/Parenting Program." In addition, the court ordered counseling for the children. The court indicated its order was subject to further hearing. The court set the matter for a review hearing on January 19, 2017.

On January 19, 2017, the court conducted a review hearing at which it modified the previous interim order to grant Jose unsupervised weekend visits with the children in

Manteca. Jose would have An.C. and E.C. from 7:30 p.m. on Friday to 5 p.m. on Sunday, on specified weekends every month. The matter was continued to May 12, 2017, for further review.

The matter was reviewed on May 12, 2017. The court maintained the grant of sole legal custody and sole physical custody to Theresa. Jose was granted unsupervised visits with An.C. and E.C., from 7:00 p.m. on Friday to 7:00 p.m. on Sunday, on alternate weekends, until the conclusion of the school year. The court further ordered that upon the conclusion of the 2016-2017 school year, An.C. and E.C. would reside with Theresa and Jose "on an alternating weekly basis with exchanges at 7:00 p.m. on Friday." The court ordered reconciliation counseling for Jose and Am.C. The court set a review hearing on June 21, 2017. The parties appeared in court on June 21, 2017 but agreed to continue the review hearing to August 3, 2017.

The parties appeared at the August 3, 2017 review hearing. The court reviewed proof Jose had been regularly attending the counseling program previously ordered by the court, for nine months. The court determined that although Jose had not yet completed the course, he had overcome the presumption established by Family Code section 3044 regarding a parent who had perpetrated domestic violence.[1] The court ordered that commencing on Friday, August 4, 2017, An.C. would primarily live with Jose and E.C. would primarily live with Theresa. The court further ordered that each parent would have weekend visitation, on alternate weekends, with the child living with the other parent; the visitation would occur on the weekend when the parent had the other child, so the siblings would be together on the weekends. The matter was continued to November 15, 2017, for review.

_____

[1] Family Code section 3044 establishes a *rebuttable* presumption against a sole or joint custody award to a contestant who has, within the previous five years, perpetrated domestic violence against the other party, the child at issue, or the child's siblings, among others.

On November 15, 2017, the parties appeared for the review hearing and agreed to continue that review hearing to April 19, 2018. On April 19, 2018, the court reviewed the matter and maintained the status quo. The court stated it would interview the children or have the children interviewed as part of Tier II mediation. The court further stated it would set a review hearing at the end of July 2018; the review was ultimately set for August 15, 2018. The Tier II mediation occurred in July-August 2018.

On August 15, 2018, the parties appeared in court for hearing; both sides addressed the Tier II mediation report. After the hearing, on August 15, 2018, the court issued an order. The order stated, inter alia: "The parents shall have joint legal custody of the minor children, [An.C. and E.C.].… [¶] … [¶] The parents shall have joint physical custody of the minor children, [An.C. and E.C.].… [¶] Commencing with the date of the signing of this Court order, the children shall reside primarily with the father, except for specific periods of time outlined below. [¶] Commencing with the date of the signing of this Court Order, the children shall reside with the mother during the 1st, 3rd, 4th and 5th weekends of each month." The order also set forth a schedule under which the children would spend holidays and school vacations with both parents in a shared format.[2] The order was not subject to further review. This appeal followed.

## DISCUSSION

### I. August 3, 2017 Order Was Not A Final Order

Theresa's claims on appeal relate to the custody order issued by the court on August 3, 2017, with respect to E.C. The court issued the August 3, 2017 order upon review of a prior interim order. The August 3, 2017 order provided that, commencing on Friday, August 4, 2017, An.C. would primarily live with Jose in Manteca (San Joaquin

---

[2] The court granted Theresa sole legal custody and sole physical custody of Am.C.

4.

County) and E.C. would primarily live with Theresa in Fresno (Fresno County). After making this order, the court set the matter for further review on November 15, 2017.

Theresa contends the trial court's order issued on August 3, 2017, was a final custody order. Theresa further contends that, because the August 3, 2017 order was a final custody order, the court could only change E.C.'s primary residence to Manteca if Jose were to show that a change in circumstances had occurred that necessitated the modification. Theresa further contends that, in light of the court's August 3, 2017 order placing E.C. primarily with Theresa, the court should have treated the August 15, 2018 hearing as addressing a move-away case and afforded Theresa a de novo hearing on the issue. Finally, Theresa contends that, in light of the court's August 3, 2017 order placing E.C. primarily with Theresa, Jose did not have sufficient custodial time with E.C. for him to have joint physical custody, undercutting his ability to obtain a move-away order to have E.C. live primarily with him in Manteca.

Theresa's contentions fail because the premise of these contentions—i.e., that the court's August 3, 2017 order was a *final* order—is incorrect. The chain of proceedings described above was triggered by Theresa's request to the court, after Am.C. obtained an emergency protective order against Jose, to modify the then-existing child custody order as to the three children, all of whom lived primarily with Jose in Manteca at the time. As is common in child custody cases, the trial court issued a series of interim orders over the next couple of years to resolve issues of custody and visitation on an interim basis, in the course of the proceedings triggered by Theresa's request for modification. The interim orders, including the August 3, 2017 order placing An.C. primarily with Jose and E.C. primarily with Theresa, were subject to subsequent review hearings. Finally, on August 15, 2018, the court issued a final custody order resolving the dispute (the August 15, 2018 order was the only order that was not subject to further review). In sum, the August 3, 2017 order was merely an interim order; the court handed down its final order on the

5.

instant custody dispute on August 15, 2018.  (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1053 ["interim custody orders … are not intended to be final judgments as to custody"].)

Theresa contends that Jose was required to make a showing of changed circumstances before the court could modify the interim August 3, 2017 order.  This contention fails because the changed circumstances rule is triggered only after a final custody adjudication has been made.  Since the August 3, 2017 order was an interim order, the changed circumstances standard did not apply to the court's subsequent modification of the order.  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 257 [the changed circumstance rule applies after any "final" judicial custody determination]; *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 433 [a party seeking to modify a "permanent" custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification].)

Moreover, the instant matter was proceeding from Theresa's September 9, 2016 request to modify the existing custody order in the 2011 judgment of dissolution of marriage.  The 2011 judgment of dissolution of marriage had granted both parties joint legal custody and joint physical custody of the children, with the children's primary residence to be in Manteca with Jose and weekends and vacation periods to be spent with Theresa in Fresno.  Accordingly, this was not a move-away case.  Indeed, Theresa's September 2016 filing did not request a move-away hearing or a move-away order. Thus, the court was not required to grant Theresa a move-away hearing or to apply the standards applicable to move-away determinations.  Similarly, Theresa's additional arguments to the effect that Jose was not entitled to a move-away determination in the

first instance because of his limited custodial time with E.C. following the court's interim August 3, 2017 order, are inapposite and unavailing.[3]  We affirm.

### DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:

HILL, P.J.

POOCHIGIAN, J.

---

[3]     Theresa does not challenge the merits of the court's final order of August 15, 2018.