[No. H026548. Sixth Dist. Nov. 1, 2004.]

KENNETH RAGGHANTI, Plaintiff and Respondent, v.
STAR O. REYES, Defendant and Appellant.

## COUNSEL

Tone & Tone, Francine R. Tone; Law Offices of Grace Kubota Ybarra and Grace Kubota Ybarra for Defendant and Appellant.

Sucherman Insalaco and Michelene Insalaco for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—Star O. Reyes (mother) and Kenneth Ragghanti (father) are the parents of the minor child, Karyn. Karyn was born on April 3, 1997. Mother and father never married and, with but a brief exception, never lived together. Karyn lived primarily with mother for the first six years of her life and visited father regularly.

When mother decided she wanted to move away and take Karyn with her, father sought an order of the court giving sole custody of Karyn to him. Prior to trial of the custody issue the parties agreed that no final permanent custody determination had ever been made so that the trial court was to use the "best interests" analysis and consider all circumstances in making its custody decision. The trial court concluded that it was in Karyn's best interest to live primarily with father and awarded sole physical custody of the child to him. Mother appeals from that order.

Mother contends that the trial court erred in applying the best interests analysis in the way it is typically used for initial custody determinations. She argues that given the length of time Karyn lived primarily with her, the court was required to find either that mother's care was deficient or that her planned relocation would be detrimental to Karyn, before the court could award custody to father. We conclude that the trial court used the correct analysis and affirm the order.

### I. FACTS

#### A. *Background*

Father was present when Karyn was born and was involved in her life for the first few weeks, but soon afterward, when he and mother stopped seeing each other, mother terminated his access to Karyn. The parties stipulated to

paternity and a paternity judgment was entered in December 1997, when Karyn was eight months old. The temporary custody order attached to that judgment provided that Karyn was to live primarily with mother and that father had visitation rights. Both parents lived in Santa Clara County at the time.

In 1998, within months of the trial court's first visitation order, mother threatened to move to Georgia. Father obtained a restraining order and the trial court ultimately found that mother's motive for moving was to deny father access to Karyn. The court ordered custody to father if mother chose to move. She did not move and Karyn remained in her custody.

After a short-lived attempt at reconciliation, the custody dispute continued. In February 2000 mother alleged that father physically abused Karyn. Child protective services (CPS) investigated the allegation and closed the case as "unfounded." The trial court noted: "There is a hint in this case that Mom is on a campaign to deny father his visitation rights."

In September 2000, mother again told father she was going to move away with Karyn. This time she planned to relocate to Sacramento. Father hired an attorney and scheduled a meeting to discuss mother's moving plans but before the meeting could take place, the trial court issued an emergency protective order that required father to stay away from Karyn. The court made the order after mother had insinuated to Karyn's preschool teacher that father had sexually molested the child and the teacher reported the conversation to CPS. Karyn underwent a sexual assault examination and the molestation allegation proved to be unfounded.

Mother then filed a motion seeking permission to move to Sacramento. The parties stipulated to the appointment of Kenneth Perlmutter, Ph.D., as a neutral evaluator to make a recommendation on mother's request to move away.

In his report dated September 14, 2001, Perlmutter observed that father had "a very good and thorough understanding of Karyn's personality and needs. He seems very capable and well equipped to see to and meet her needs." Karyn and father had a very appropriate and loving relationship and a "close and meaningful emotional bond." Perlmutter described mother as a "good enough mother and parent." He was concerned that mother had acted to limit the flourishing relationship between father and Karyn. Karyn's therapist, Jonee Donnelly, did not believe anyone had been physically or sexually

inappropriate with Karyn and questioned the "validity and truthfulness of some of [mother's] reports to her." She observed that Karyn had a troubling pattern of making negative comments about her father and Donnelly believed that mother was the source of this. Perlmutter noted: "There is a clear and definitive pattern that [mother] has attempted to discredit [father] by providing information to others that might cause them to take actions that would jeopardize [father's] custodial rights." Perlmutter also believed "that a substantial part of [mother's] request to move to Sacramento is based on her desire to limit the amount of time [father] spends with Karyn." He concluded: "To approve a move to Sacramento would likely be a death knell for this child continuing to have a positive relationship with her father."

When neither party objected, the trial court adopted Perlmutter's recommendations in an order dated March 4, 2002. The order gave the parents "joint legal and joint physical custody" of Karyn and called for father to have full physical custody if mother decided to move away.

### B. The Instant Dispute—Mother's Third Request to Move Away and Father's Request for Sole Physical Custody of Karyn

On June 17, 2002, evidently prompted by a concern that mother still wanted to move to Sacramento, father filed a motion seeking sole physical custody of Karyn. Mother filed her own motion two days later, again seeking permission to move to Sacramento. Mother had recently been married and her new husband lived and worked in Sacramento. Perlmutter was engaged to perform another custody evaluation. Pursuant to the parties' agreement, the court directed him to conduct a de novo evaluation of all the circumstances and make a custody recommendation based upon the child's best interests.

Perlmutter's March 18, 2003 report concluded that whether or not mother chose to move to Sacramento, it would be in Karyn's best interest to award sole physical custody to father. Mother objected to the recommendation and the matter proceeded to trial.

The issue of a permanent custody/visitation order was tried over three days in September 2003. Perlmutter's opinion was largely the basis for the trial court's ultimate decision. Perlmutter was concerned that mother did not show any understanding of how her decisions affected Karyn and did not communicate effectively with the girl. While interviewing mother and Karyn to

gether, Perlmutter observed their interaction and was troubled by Karyn's "significant regressive behavior." Perlmutter questioned whether mother would be able to give Karyn a consistent and predictable lifestyle, pointing out that mother shuttled her between San Jose and Sacramento and among four different houses.

In contrast, Perlmutter had no such concerns about father. In his written report he stated that Karyn's relationship with father "has solidified and thrived. [Father] continues to be a very important part of Karyn's life. His role is at least equal to that of the mother. He has provided for her in ways that her mother has not. He has demonstrated a sensitivity to her needs in ways that her mother has not. He has been solely focused on her best interests in ways that her mother has not. He has been emotionally stable in ways that mother has not. He has provided her one stable home that her mother has not." Perlmutter concluded that Karyn needed a stable environment to maximize her future development and that she was most likely to have that if she lived primarily with her father.

The trial court's "Statement of Decision and Order After Trial" was filed October 6, 2003. Applying the best interests standard, and expressly considering the fact that the child had spent more time with mother than with father during the preceding six years, the trial court concluded that it was in Karyn's best interest to live primarily with her father during the school year. The court specifically found that the existing custody arrangement was a de facto joint custody arrangement. The court found that Karyn was equally bonded to mother and father and that father was a "significant" part of her daily life. The court also found that father was the parent most likely to share custody and that "mother may not have the ability to do that." The trial court explained that its decision was based in large part upon what had happened in the past and upon Perlmutter's opinion. The trial court declined to make a finding that mother's care had been deficient, stating, "The court views the mother in a very positive light in many ways and finds that mother takes generally good care of Karyn and loves her daughter and is doing the best she can."

## II. ISSUE

Was the trial court required to find that Karyn would suffer detriment in mother's custody before deciding to award custody to father?

## III. DISCUSSION

■ "The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess* (1996) 13

Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473] (*Burgess*).) Under this test, we must uphold the trial court if its ruling is correct on any basis, regardless of whether such basis was actually invoked. (*Ibid.*)

Mother's appeal is based only upon her contention that the trial court applied the wrong legal analysis in reaching its decision. Before addressing mother's specific contentions, we first describe the analyses used in making custody determinations.

■ The trial court is always bound to make a custody decision based upon the child's best interest. But depending upon the posture of the case, the trial court will use either the "best interest" analysis or the "changed circumstances" analysis. The best interest analysis is used when making a permanent custody determination initially. "In an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. (b).) It must look to *all the circumstances* bearing on the best interest of the minor child." (*Burgess, supra*, 13 Cal.4th at pp. 31–32.)

The changed circumstances test requires a threshold showing of detriment before a court may modify an existing final custody order that was previously based upon the child's best interest. The rule is based upon principles of res judicata. (*Burchard v. Garay* (1986) 42 Cal.3d 531, 535 [229 Cal.Rptr. 800, 724 P.2d 486].) In these cases, "a child should not be removed from prior custody of one parent and given to the other ' "unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change." ' " (*Burgess, supra*, 13 Cal.4th at p. 38, quoting *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730 [157 Cal.Rptr. 383, 598 P.2d 36].)

In the present case, the parties stipulated at the beginning of trial that there was no existing final custody order and that the instant matter was to be decided as an initial custody decision under the best interests analysis. Mother does not claim otherwise now. Indeed, she states, "no one in this case has taken the position that the previous order was a final adjudication of custody."[1] Thus, the trial court was correct in applying the best interests

---

[1] Mother qualified this statement at oral argument when she suggested that the custody order incorporated into the 1997 "Judgment of Paternity by Stipulation" was a final order, which, in hindsight, should have required application of the changed circumstances analysis to the instant dispute. (See *Burgess, supra*, 13 Cal.4th at p. 37.) But contrary to mother's suggestion, the 1997 custody and visitation order expressly states that the orders are "temporary." *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 258 [109 Cal.Rptr.2d 575, 27 P.3d 289] held that in the case of a stipulated custody order, the changed circumstance rule applies to later custody disputes only if there is a "clear, affirmative indication" that the parties intended the earlier stipulated order to be final. Although we need not decide the point, we observe that the face of

standard and in considering *all* pertinent circumstances bearing upon Karyn's best interest.

Notwithstanding her acknowledgement that the best interests standard is appropriate, mother argues that the trial court erred in finding that the prior custody arrangement was true joint custody, that the court should have taken into consideration her "presumptive right" to relocate, which required father to show that the move will be detrimental to Karyn, and that the child's interest in continuity and stability demands that the court find mother's care was deficient before a change in custody is warranted.[2]

■ We first reject mother's concern that the court erred in finding the arrangement was true joint custody. The finding has import only where there is an existing final custody order. Although the changed circumstances test usually applies after a final custody order is in place, where parents share custody "under an existing order and in fact" and one of the parents wants to move away, the changed circumstances analysis is not appropriate since the existing order becomes a practical impossibility. In that situation, "[t]he trial court must determine de novo what arrangement for primary custody is in the best interest of the minor children." (*Burgess, supra*, 13 Cal.4th at p. 40, fn. 12.) Here, since the parties agreed that there was no existing final custody order, the best interests analysis applied regardless of how we characterize the preexisting custody arrangement.

As to the remainder of mother's contentions, there is no legal support. Mother's argument that father had the burden to show proof of detriment resulting from her planned relocation is taken from language found in the *Burgess* case. *Burgess* explained how the trial court was to analyze move-away cases in two situations: first, when making an initial custody decision, and second, when the decision involves changing an existing final custody order. Mother's argument erroneously merges passages taken from these two separate discussions.

*Burgess* held that in making an *initial* custody decision, if one or both of the parents was planning to move away, "the trial court must take into

---

the 1997 custody order contains no affirmative indication that the parties intended it to be a final order.

[2] Father contends that mother waived her argument that anything other than the best interests analysis should apply. We agree that since mother stipulated that no final permanent custody order had been made, she is estopped from arguing otherwise. However, as we understand her brief, mother urges a best interests analysis that also requires some threshold showing of detriment. Since mother made the same argument below we shall consider its merits.

account the presumptive right of a custodial parent to change the residence of the minor children, so long as the removal would not be prejudicial to their rights or welfare. [Citation.] Accordingly, in considering all the circumstances affecting the 'best interest' of minor children, it may consider any effects of such relocation on their rights or welfare." (*Burgess, supra,* 13 Cal.4th at p. 32.) In contrast, once a final custody order is in place, "a change of custody is not justified simply because the custodial parent has chosen, for any sound good faith reason, to reside in a different location, but only if, as a result of relocation with that parent, the child will suffer detriment rendering it ' "essential or expedient for the welfare of the child that there be a change." ' [Citation.]" (*Id.* at p. 38.)

In other words, when there is an existing final custody order in a move-away case, the changed circumstances test applies just as it would in any other case. Unless the move will result in detriment that makes a change in custody "essential or expedient" for the child's welfare, the existing order must stand. But in an initial custody decision, although the trial court must "take into account" a planned move and any resulting prejudice to the child, those considerations do not preclude the court from also considering all the other circumstances bearing upon the child's best interest. The noncustodial parent does not have a burden to show that the move will be detrimental. To be sure, under the best interests analysis, even if the detriment resulting from a planned move is insufficient by itself to warrant changing a temporary custody order, other circumstances can support the finding that a change in custody is in the child's best interest.[3]

Mother further argues that where there is a long established custody arrangement the noncustodial parent has the burden to prove that the custodial parent's care is deficient or that the child's welfare has suffered. In *Burchard v. Garay, supra,* 42 Cal.3d at page 536 the appellant made a similar argument: "[Mother] does not claim that there has been a prior custody determination, and that the court should have examined only events which occurred subsequent to that determination. Instead, she argues simply that because she has had custody for a significant period, she and [father] do not start on an equal basis; instead, he should have the burden of persuading the court that a change in custody is essential or expedient for the welfare of the child. We agree in substance with this argument: in view of the child's

---

[3] Mother argues in her reply that the recent case of *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 [12 Cal.Rptr.3d 356, 88 P.3d 81] further supports her position. Since *LaMusga* involved the application of the changed circumstances analysis (*id.* at p. 1089) it is not applicable to the case at hand.

interest in stable custodial and emotional ties, custody lawfully acquired and maintained for a significant period will have the effect of compelling the noncustodial parent to assume the burden of persuading the trier of fact that a change is in the child's best interest. That effect, however, is different from the changed-circumstance rule, which not only changes the burden of persuasion but also limits the evidence cognizable by the court." That is to say that under the best interest analysis, the trial court's consideration of the evidence is not limited by the need to make a threshold finding of detriment.

■ We agree that regardless of whether the trial court is being asked to make an initial custody order or a change in an existing order, a paramount concern is the need for stability and continuity in the life of a child, and the harm that may result from disruption of established patterns of care and emotional bonds. (*Burchard v. Garay, supra*, 42 Cal.3d at p. 541.) "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role." (*Id.* at p. 538.) Indeed, where one custody arrangement has been in place for a significant period of time, the noncustodial parent has the "burden of persuading the trier of fact that a change is in the child's best interest." (*Id.* at p. 536.) But while the child's interest in continuity and stability is a factor that weighs heavily in the equation, it does not change the fact that if there was no existing final determination of what custody arrangement was in the child's best interest, the noncustodial parent does not have a burden to show that an existing arrangement is detrimental. In this case, that means that father had the burden of proving that even considering the length of time Karyn had lived with mother, Karyn's interest would be best served by awarding custody to him. He might have met that burden by showing that mother's care was seriously deficient, but under the best interest standard, the trial court's consideration of all the circumstances was not dependent upon such proof.

We conclude that the trial court did not err in refusing to make a finding of detriment.

## IV. DISPOSITION

The trial court's order dated October 6, 2003, is affirmed.

Bamattre-Manoukian, J., and Walsh,* J., concurred.

A petition for a rehearing was denied November 23, 2004, and appellant's petition for review by the Supreme Court was denied February 16, 2005.

---

*Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.