Filed 5/29/14  R.W. v. T.P. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| R.W.,<br><br>                              Respondent,<br><br>              v.<br><br>T.P.,<br><br>                              Appellant. | B245489<br><br> (Los Angeles County<br>  Super. Ct. No. BF028374) |

APPEAL from the order of the Superior Court of Los Angeles County.  Michelle Williams, Judge.  Affirmed.

T.P., in pro. per., for Appellant.

Gordon ǀ Gordon Lawyers and Christiaan J. Gordon for Respondent.

.

\* \* \* \* \* \* \* \* \*

## SUMMARY

In this protracted paternity action, which commenced in 2005, T.P. has purported to appeal from custody and child support orders entered on January 3, 2012, and from the October 1, 2012 order denying her request to modify the January 3, 2012 orders. We have dismissed the appeal of the January 3, 2012 orders as untimely, and therefore, only the October 2012 order is before us. T.P. contends she made the required prima facie showing of changed circumstances, and that the trial court abused its discretion when it failed to conduct an evidentiary hearing on her application. Finding no abuse of discretion, we affirm the order below.

## FACTUAL AND PROCEDURAL BACKGROUND

R.W. and T.P. have one minor child together, M.P., born in 1996. In 2005, R.W. initiated a paternity action against T.P. In March 2006, the parties entered into a Conciliation Court Agreement and Stipulated Order re Custody and Parenting Plan. The parties agreed to share legal custody of M.P., with T.P. having primary physical custody, and R.W. to receive visitation according to an agreed upon schedule.

However, the litigation became contentious, fraught with disputes about parental decision-making authority and financial matters. The exact scope and number of the disputes is not clear from the record on appeal, which includes only a sampling of motions and orders. What the record does reveal is that in December 2010, the trial court entered a judgment, following a contested proceeding, governing custody, healthcare decisions, communication between the parents, enrichment and social activities, education, and holidays. The judgment gave the parents joint legal custody, with the "primary caretaking responsibility" residing with T.P.

In September 2011, T.P. sought an ex parte order to allow her to move with M.P. to New York. In support of her ex parte application, T.P. included a declaration from M.P. that she wanted to live in New York with her mother. On October 3, 2011, the trial court entered an order denying T.P.'s requested ex parte relief, and ordered that M.P. would live with R.W., awarding T.P. visitation on the first, third, and fifth weekend of

2

each month. The trial court set T.P.'s request for a move-away order for hearing on December 14, 2011.

Following a trial on November 17, 2011, of T.P.'s order to show cause (OSC) re: child support (prospective, retroactive, and arrearages) and her OSC seeking permission to move M.P. to New York, the trial court issued its findings and orders on January 3, 2012. No reporter's transcript of the November 17 trial proceedings has been furnished on appeal. The orders reflect that the trial court struck T.P.'s testimony because she failed to appear at trial to be cross-examined, and awarded sole legal and physical custody to R.W., with monitored visits for T.P. The court found that M.P. had continuously been in R.W.'s custody since October 22, 2011, and that T.P. had made no effort to communicate with M.P. since that date. The orders were "permanent custody order[s] as defined by *Diaz vs. Montenegro* (2001) 26 Cal.4th 249" and the orders "supercede[d] all prior custody orders entered in this matter."

On March 14, 2012, T.P. filed a notice of appeal from the court's January 3, 2012 findings and orders, which was assigned case No. B239822. That appeal was dismissed on May 17, 2012, by the administrative presiding justice of this court, pursuant to California Rules of Court, rule 8.140(b).

T.P. then sought relief in the trial court, moving on May 9, 2012, for the trial court to set aside its January 3, 2012 findings and orders. In her motion, she averred that she "was physically and . . . mentally unable to participate in the proceedings in November 2012"; she had "fled to New York because of [her] husband [E.W.'s] conduct"; that "[E.W.] had taken all of [her] evidence for trial"; and M.P. "was missing and had run away as a result of this court's order of Sept. 21, 2011" (apparently, meaning the order denying T.P.'s ex parte application for a move-away order). That motion was denied on September 12, 2012.

On July 30, 2012, T.P. filed a motion for orders modifying child custody, child support, and visitation, which is at issue in this appeal. In support of her motion, T.P. submitted a declaration averring that "[i]n the fall of 2011, custody was improperly taken away from me without due process. There was no evidence. I could not appear. [¶] . . .

3

An application to set aside those judgments is now pending before this court. . . . [¶] . . . Respondent has not seen the minor child . . . since approximately September 26, 2011 when she ran away from the respondents [*sic*] home. . . . [¶] Since the minor child has been in the petitioner's custody and care, she has run away on at least three (3) other occasions. [¶] . . . On July 26, 2012 at approximate [*sic*] 2:00 am Los Angeles time, respondent received several unidentified calls. [¶] . . . Upon returning the calls respondent eventually reached the pharmacy and found that the minor child was there. [¶] . . . The minor child reported that she has run away again." T.P. sought joint legal and physical custody, specified visitation, that M.P. be immediately seen by a psychiatrist and prescribed medication.

Appended to the application were M.P.'s June 2012 academic progress report, showing poor grades, and a Facebook communication from M.P. to T.P., where M.P. wrote, "I just had a mental breakdown momm started cutting crying lockked myself iin my room dad came practicslly blsming for not fitting in to the environment im in and that's on me and that wouldnt be good parents if they didnt tell me wrong from right and Sandra tried to tell me some bullshit got mad said call the police to my dad he didnt he tried to talk to me didnt work cause I really doNNt CARE I HATE THEM!! point. blank.period thats that we will never be a family and I will always stay the person that i am and im stopping therapy cause I see that all shit causei see that i think shes telling him my bizness im tired."

In response, R.W. submitted a declaration averring that M.P. had run away from T.P.'s care on September 28, 2011. R.W. reported M.P. missing to the Riverside Sheriff's Department. On October 21, 2011, R.W. received a call from attorney Gloria Allred, who stated that M.P. was at her office. M.P. was returned to R.W.'s care. R.W. also submitted evidence that T.P. missed the trial that resulted in the January 3, 2012 order because she was performing in various plays in New York, and that T.P. left California to go to New York just two days after M.P. went missing. R.W. also averred that T.P. has not attempted to visit M.P., but that M.P. was doing well in school, and was involved in the community.

An investigator with the Riverside Sheriff's Department, Robert Cornett, submitted a declaration concerning his efforts to locate M.P. when she went missing. He traced phone calls received from M.P. to the Chicago area. When Cornett interviewed M.P. after she returned home, M.P. admitted she was in Chicago with family. She said she "stole her mother's credit card, charged the plane ticket[], and boarded the flight [to Chicago] on her own without any form of ID." When confronted about the improbability of her story, M.P. said she "did not want to get her mother or anyone in trouble, and she did not want her mother to lose custody of her son, so she was not going to tell [the investigator] anything more." Cornett found a video that M.P. had posted online, stating that she could make her own decisions and that the courts should allow her to decide. He learned that the video had been uploaded to the internet from a university campus. T.P. has a very good friend who lives and works near the university campus. The investigator concluded that T.P. most likely purchased the plane tickets for M.P., and that T.P. "was the only person who would have hidden [M.P.], and that there was no way that [M.P.] could have run away, on a plane, by herself."

T.P. did not file a reply.

At the October 1, 2012 hearing on T.P.'s application, T.P. represented that M.P. wished to testify to make her wishes known. T.P. therefore requested "a full blown evidentiary hearing" on her application. However, T.P. did not submit a witness list before the hearing. According to R.W., T.P. had subpoenaed M.P. to provide testimony at the hearing, and M.P. was "very, very upset" about the subpoena, and did not wish to testify. The trial court denied T.P.'s application, concluding that T.P. "did not submit sufficient evidence to show that there has been a material change in circumstances." The trial court also concluded that T.P. had not shown "just cause" for an evidentiary hearing.

On November 19, 2012, T.P. filed two notices of appeal. One notice again purported to appeal from the January 3, 2012 findings and orders, and the other notice appealed the order entered on October 1, 2012. We denied R.W.'s motion to dismiss T.P.'s appeal from the January 3, 2012 orders because T.P. did not receive notice of the motion to dismiss. We invited briefing, however, on our own motion, concerning the

5

timeliness of T.P.'s appeal from the January 3, 2012 orders. On January 16, 2014, we dismissed the portion of T.P.'s appeal concerning the January 3, 2012 orders as untimely. Therefore, the scope of this appeal has been narrowed significantly, to address only the court's October 1, 2012 order, denying T.P.'s request for modification of the January 3, 2012 custody orders.

## DISCUSSION

T.P. contends the trial court abused its discretion when it denied her motion to modify the January 3, 2012 custody orders, and when the trial court failed to conduct an evidentiary hearing. On this record, we can find no abuse of discretion.

Modification of a final judicial custody determination is appropriate "only if the parent seeking the modification demonstrates 'a significant change of circumstances' indicating that a different custody arrangement would be in the child's best interest. [Citation.] Not only does this serve to protect the weighty interest in stable custody arrangements, but it also fosters judicial economy." (*In re Marriage of Brown and Yana* (2006) 37 Cal.4th 947, 956.) "The changed circumstances test requires a threshold showing of detriment before a court may modify an existing final custody order that was previously based upon the child's best interest." (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996.) Custody and visitation orders are reviewed on appeal for abuse of discretion. Under this deferential standard of review, we must uphold the trial court's ruling as correct on any legitimate basis. (*Id.* at pp. 995-996.)

Moreover, an evidentiary hearing should be held only when necessary. (*In re Marriage of Dunn* (2002) 103 Cal.App.4th 345.) "[A]n evidentiary hearing serves no legitimate purpose or function where the noncustodial parent is unable to make a prima facie showing of detriment in the first instance, or has failed to identify a material but contested factual issue that should be resolved through the taking of oral testimony." (*In re Marriage of Brown and Yana*, *supra*, 37 Cal.4th at p. 962.)

To the extent that Family Code section 217, which became effective in 2011, now requires the court to receive "any live, competent testimony that is relevant and within the scope of the hearing," it also requires the party seeking to present live testimony to

6

serve a witness list prior to the hearing, and vests the trial court with discretion to refuse to receive live testimony for good cause.  (§ 217, subds. (a), (b), & (c); see also *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 312-313.)

Here, at the time of the October 2012 hearing, R.W. represented that M.P. was doing well in his care, and that T.P. was the cause of M.P.'s runaway behavior.  Mother presented absolutely no evidence that a change in the custody arrangement was warranted, or was in M.P.'s best interests.  Moreover, she did not serve a witness list before the hearing indicating that M.P. would testify.  It is clear that the contentious custody dispute has been hard on M.P., and there was no indication that her testimony would add anything constructive to the proceedings.  Therefore, we find no reason to reverse the trial court's order.

## DISPOSITION

The order is affirmed.


GRIMES, J.


We concur:


RUBIN, Acting P. J.


FLIER, J.

7