Filed 10/6/21  Marriage of Clayton CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of JON and MELISSA CLAYTON. | D077033 |
| JON CLAYTON,<br><br>     Appellant,<br><br>     v.<br><br>MELISSA CLAYTON,<br><br>     Respondent. | (Super. Ct. No. 17FL007884C) |

APPEAL from an order of the Superior Court of San Diego County, Daniel F. Link, Judge.  Affirmed as modified.

Jon Clayton, in pro. per., for Appellant.

Primus Family Law Group and Amy Elizabeth West for Respondent.


This family law litigation involves a dispute between Jon Clayton (Father) and Melissa Clayton (Mother) over where their child (Daughter) will

attend transitional kindergarten.[1]  Father, who lives in Ocean Beach, wants Daughter to attend a school near him—either Ocean Beach Elementary (O.B. Elementary) or Saint Charles Borromeo Academy (St. Charles), a private Catholic school.  Mother, who lives in Rancho Peñasquitos, asked that the court order Daughter to attend Los Peñasquitos Elementary School (Los Pen).

Based in large part on expert testimony, the family court determined it was in the child's best interests to attend Los Pen.  To ameliorate Father's burden of driving Daughter to and from Los Pen on his custodial days, the court ordered that Mother pay the cost of extended school services (ESS) unless Father relocates.  In the same order, the court also resolved the parties' unrelated discovery dispute.

Father appeals, asserting:  (1) the court abused its discretion in concluding it would be in Daughter's best interests to attend Los Pen; (2) the court's oral order regarding ESS payments conflicts with the written order, which terminates that obligation if and when Father relocates; and (3) the court abused its discretion in adjudicating a discovery dispute that was not properly before the court, then erroneously ruled that Father had waived objections to the discovery requests.

We agree with only the second part of the last contention:  The court abused its discretion in determining Father waived objections to the discovery requests.  Accordingly, we will modify the order to strike the waiver language and affirm the order as modified.

---

[1]     Transitional kindergarten is a program designed for children born between September 1 and December 31 to "enhance their readiness for kindergarten" for the following academic year.  Unlike preschool or day care, transitional kindergarten has a state-mandated curriculum.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in 2013 and Father petitioned for dissolution in 2017. At the time this dispute arose in 2019, their Daughter was five years old. After separation, Father remained in the family home in Ocean Beach; Mother lived with her parents in Rancho Peñasquitos. The parties share joint legal and physical custody of Daughter.

As Daughter neared the end of her preschool education, Father wanted her to transition to St. Charles, a Catholic private school, or O.B. Elementary, a public school in the San Diego Unified School District. Both schools are located in Ocean Beach. Mother wanted Daughter to attend Los Pen, a public school in the Poway Unified School District.

A trial to resolve the issue of school selection occurred in August and October 2019. Father asserted that enrolling Daughter at Los Pen would take her away from her existing home, church, and community contacts. He also voiced concern about his ability to maintain two jobs while making the extended commute to Los Pen. He initially discussed moving to Rancho Peñasquitos should the court order Daughter to attend Los Pen, but ultimately said he could not afford to move to the area.

Mother expressed her discomfort with the prospect of enrolling the child in a religious-affiliated school, as well as with the culture of O.B. Elementary. She also noted the child's "core group of friends" and social involvement in the Rancho Peñasquitos community.

Dr. Helene T. Mandell, Ed.D., a recently retired director of field experiences at the University of San Diego, testified as Mother's retained expert. According to the State of California, Los Pen is ranked in the top 20 out of 5,881 schools, whereas O.B. Elementary is ranked 1,169. Additionally, St. Charles does not have a transitional kindergarten program and teachers

3

at parochial schools are not required to have the "same rigorous" credentials as do those in public school systems.  Mandell compared various other measures of school performance and concluded that Los Pen was the best school choice for Daughter.

Father then called Denise Langlois, the director of St. Peter's preschool in Point Loma, where Daughter was currently attending.  Langlois testified that "[Daughter has] really acclimated well to everything that's been going on in her life. . . .  She's capable of doing anything we ask her to do.  She's helpful, she's friendly, she's loving, she's sweet.  She's a great kid."  When asked about Daughter's readiness to transfer to another school, Langlois opined, "I would say [the child] is ready for anything that's presented to her."

While deliberating on the school choice question, the court acknowledged it was a "difficult decision" because of the distance between the parents' homes  and Daughter's familiarity with Ocean Beach.  But it emphasized that "[Father's] argument . . . lies in geographic desirability . . . . [¶]  [Mother] has put an expert on the stand . . . [w]ho has talked about essentially Poway out performing Ocean Beach Elementary in almost every category."

The court delivered its final ruling:  "[I]t's important that since you are a good father and clearly love [Daughter] very much, you are fighting for her and the Court sees that[;] it's important to maintain the 50/50 custody. . . . The facts are what they are.  Poway is an excellent school district with an excellent program and excellent ratings and [Daughter] appears to be going fine.  So my decision for the school is it remains [Los Pen]."  The court added, "If you want ESS before and after school, which would be an option for you to get her there earlier and pick her up late . . . [t]hat is something you can have and that is something mom can pay for."

4

After delivering its ruling, the court instructed Father as to how to preserve his objections to any written order. There is nothing in the record to suggest Father objected to the proposed order, yet it contained the ESS and discovery provisions Father disputes on appeal.

## DISCUSSION

1. *Substantial Evidence Supports the Court's Determination That It Was In Daughter's Best Interest to Attend Los Pen.*

Father contends the court abused its discretion by placing Daughter at a public school in her Mother's neighborhood when there was a similarly ranked public school in his neighborhood. His argument is rooted in a desire to maintain the "status quo" by keeping Daughter in the community "in which she was living and had made friends." He further argues that relying on expert witness testimony as to which public school is superior violates public policy.

a. *Standard of Review*

The parents' choice of school for their child falls within the issues lumped under the heading "legal custody." (Fam. Code, § 3003[2]; see, e.g., *In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, 1568.) " 'The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test.' " (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) To the extent Father challenges the court's factual finding that it was in Daughter's best interests to attend Los Pen, our review is limited to whether substantial evidence supports the ruling. (See *Sanchez v. Sanchez* (1961) 55 Cal.2d 118, 126 ["Our function has been fully performed when we find in the record substantial evidence which supports the essential findings of the trial court."].) "An expert's opinion is substantial evidence if it has

---

[2] Further statutory references are to the Family Code.

5

evidentiary support and is accompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion." (*San Diego Gas & Electric Co. v. Schmidt* (2014) 228 Cal.App.4th 1280, 1292 (*San Diego Gas*).)

   b. *Substantial Evidence Supports the Court's Choice of School*

Father asserts that "[s]tatus quo is best" and, therefore, the court abused its discretion by "[p]lucking" Daughter from her Ocean Beach community to attend Los Pen. It is true, of course, that continuity and stability are important for a child's welfare. (See, e.g., *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 999 [under the "best interest analysis," the child's "need for stability and continuity" is important].) But maintaining the status quo is not the only relevant consideration. (See *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1091 [noting that determining the best interest of the child " 'requires the court to consider *all* the circumstances' " (italics added)].)

Here, the court considered the benefits to Daughter of attending school in Ocean Beach, noting, "[S]he did spend a great deal of her life in OB, the preschool that she attends is in OB, a lot of her friends and community [are] in OB." But relying on Langlois's testimony, the court emphasized that "[Daughter] is bright and wherever she goes she will likely excel so we have to figure out what school is best." Thus, contrary to Father's contention, the family court considered the benefits of maintaining the status quo but determined those benefits were outweighed by other considerations.

There is ample substantial evidence to support the court's conclusion that attending Los Pen is in Daughter's best interest. Mandell's expert testimony alone is enough to sustain that finding. (See, e.g., *San Diego Gas*, *supra*, 228 Cal.App.4th at p. 1292.) Indeed, Father does not contend

otherwise. Rather, without citation to authority he contends that as a matter of law, determining which of two public schools is superior "violates public policy" and "is perverse." If a school meets state standards, he argues, "that should be the end of it"—especially where, in his view, one school is ranked "only marginally" above the other.

We are unpersuaded. To begin, this is not a case where one school is ranked "only marginally" above the other. Out of some 5,880 California public elementary schools, Los Pen ranked 17. O.B. Elementary ranked 1,169. More importantly, Father does not explain how evaluating the relative quality of available school options violates public policy.[3] The quality of the local public school is a factor considered by parents in deciding where to reside. Relative school ranking is certainly not determinative, but it is a relevant factor in the "best interest" analysis that in this case fully supports the family court's decision.

2. *Properly Interpreted, There Is No Discrepancy Between the Court's Oral and Written Orders.*

Father next maintains that the reporter's transcript and the court's final written order are in conflict. At the hearing, the court verbally recited an ostensibly unconditional obligation on Mother to pay for Daughter's before and after school care. Yet the subsequent written order conditions Mother's payment obligation on Father remaining at his current residence in Ocean Beach. Father urges us to resolve the inconsistency in favor of the reporter's transcript.

---

[3] Indeed, the California Department of Education takes the position that ranking public schools actually promotes the public policy of accountability and improvement of public education. (See <https://www.cde.ca.gov/ta/ac/cm/> [as of Oct. 6, 2021], archived at <https://perma.cc/B3ZF-VSRU>.)

a. *Father Forfeited the Issue, But We Exercise Our Discretion to Excuse the Forfeiture*

We agree with respondents brief that Father forfeited his argument by failing to comply with the proper procedure for objecting to a proposed order after hearing outlined in California Rules of Court, rule 5.125(e). (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1002 (*Hinman*) ["Failure to object to the ruling or proceeding is the most obvious type of implied waiver."].)[4] But "[a]ppellate courts have discretion to consider a theory or issue raised for the first time on appeal where it presents a pure question of law . . . ." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶ 8:272.) Here, Father's argument hinges on a pure question of law—i.e., the correct interpretation of the court's written order. (See *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205 [" 'The interpretation of the effect of a judgment is a question of law within the ambit of the appellate court.' "].) We therefore exercise our discretion to consider the issue despite forfeiture.

b. *Correctly Interpreted, There Is No Discrepancy Between the Court's Oral and Written Orders*

" 'In construing orders they must always be considered in their entirety, and the same rules of interpretation will apply in ascertaining the meaning of a court's order as in ascertaining the meaning of any other writing. If the language of the order be in any degree uncertain, then

---

[4]     Though *Hinman* uses the term "implied waiver" to characterize the loss of the right to challenge a ruling on appeal based on failure to adhere to proper procedure in the trial court, our Supreme Court has observed that the correct legal terminology is "forfeiture": "[A] person who fails to preserve a claim forfeits that claim" whereas "waiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.)

reference may be had to the circumstances surrounding, and the court's intention in the making of the same.' " (*Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77.)

Here, the text of the order provides that "Mother shall pay for [ESS] pending . . . termination due to Father's relocation of residence." Directly below is an additional provision titled "FATHER'S POTENTIAL RELOCATION" that reiterates termination of Mother's obligation "[s]hould Father relocate out of his present community . . . ." We note not only the repetition of this provision, but also that the court manually struck out other parts of the proposed order while leaving this portion untouched—indicating that it carefully reviewed the language of the proposed order to ensure consistency with the court's intent.

Additionally, the court ordered Mother to pay for ESS as a direct response to Father's claimed difficulties managing his work and the school commute on his custodial days. If Father were to relocate closer to Rancho Peñasquitos, before and after school care might no longer be necessary and the underlying rationale for the order would cease to exist. Thus, the written order merely explicates what was already an implicit assumption of the oral order.[5]

---

[5] The plain language paradoxically suggests Mother's obligation to pay ESS will terminate whether Father's moves closer to or farther from Los Pen. What it really means is that the court will revisit the issue if and when circumstances change. If Father relocates but still requires ESS, he may, of course, initiate proceedings seeking a new order. (See § 3078 ["An order for joint custody may be modified or terminated upon the petition of one or both parents or on the court's own motion if it is shown that the best interests of the child requires modification or termination of the order."].)

9

3. *The Court Abused Its Discretion by Violating Fixed Legal Principles When It Determined That Father Had Waived his Objections to Discovery.*

Father contends the court erroneously decided an issue not before it. He notes that the hearing was as to "school issues only," yet the court went on to address an unrelated discovery dispute between the parties. He further argues that the court erred in finding he waived objections to the discovery requests.[6]

a. *Additional Procedural Background*

After resolving the issue of school selection, the court addressed trial dates for the parties' pending marital dissolution litigation. Mother's counsel informed the court the dates might need to be postponed because Father had failed to respond to discovery requests. Father maintained he had not received them.

In an effort to save both parties time and expense in litigating a motion to compel, the court created a new, expedited discovery schedule in which Mother would resend discovery the following day and Father would respond eight days later. The court's final written order reflected the modified discovery schedule, but it also added an additional provision that was not discussed during the hearing: "Father's failures [to respond to discovery] have resulted in a waiver of objections per Code."

---

[6] As with the ESS issue discussed above, Father again failed to comply with the proper procedure for objecting to the proposed provision. But here, Mother did not assert forfeiture in her respondent's brief. (See *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552, 560, fn. 6 [party "forfeited the [forfeiture] issue by failing to assert it" in the respondent's brief].) Even if she had, we would have rejected the argument and reached the merits because the issue presents a pure question of law. (Eisenberg et al., *supra*, at ¶ 8:272.)

10

b. *The Court Properly Exercised Its Inherent Power to Administer Judicial Proceedings*

It is well established that courts have the "inherent power" to "exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967; see also Code Civ. Proc., § 128, subd. (a)(3).) Here, although the hearing was set to address "school issues only," both parties implicitly consented to adding a discussion of the discovery issues. Therefore, the court's decision to streamline the proceedings was proper and consistent with its inherent power.

c. *The Court Abused Its Discretion in Determining That Father Waived His Objections to Discovery*

"[A]ppellate review of discovery rulings is governed by the abuse of discretion standard.'" (*Advanced Modular Sputtering, Inc. v. Superior Court* (2005) 132 Cal.App.4th 826, 833.) The discretion exercised by the court in making these rulings " 'is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. . . .' " (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1283.)

At no point during the hearing did the court mention any waiver of Father's objections. Instead, the order presumably relies on Code of Civil Procedure section 2031.300, which provides that a party who "fails to serve a timely response" to discovery "waives any objection to the demand." But this provision only applies in the case of an *untimely response*, and the court made no such finding here. Rather, it found it unnecessary to decide whether Father had timely responded. Instead of adjudicating that issue, and in the interests of efficiency, the court simply reset the discovery schedule. Father was afforded no opportunity to be heard on whether he received actual notice of the requests and, accordingly, on the timeliness of his response. By

11

entering a written order that added, without notice, the finding that Father had waived any objections to the discovery requests, the court violated statutory requirements as well as fixed principles of due process.

DISPOSITION

The order entered November 25, 2019, is modified to strike, "Father's failures have resulted in a waiver of objections per Code." As so modified, the order is affirmed. Both parties shall bear their own costs.

DATO, Acting P. J.

WE CONCUR:

GUERRERO, J.

DO, J.

12