Filed 10/5/22  Webb v. Webb CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| MARCIA EILEEN WEBB, | C093661 |
| Plaintiff and Respondent, | (Super. Ct. No. PFL20170238) |
| v. | |
| MICHAEL MATHIS WEBB, | |
| Defendant and Appellant. | |

In this family law proceeding, Michael Webb (father) appeals from an order declaring him a vexatious litigant and requiring him to obtain prefiling approval before filing court documents.  (Code Civ. Proc., §§ 391, subd. (b)(3), 391.7, subd. (a).)[1]  Father contends the trial court abused its discretion because father did not repeatedly file unmeritorious motions.  Finding no abuse of discretion, we will affirm the trial court's order.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

## LEGAL AND FACTUAL BACKGROUND

### A

As relevant here, a vexatious litigant is a self-represented individual who repeatedly files unmeritorious motions, pleadings, or other papers. (§ 391, subd. (b)(3).) What constitutes "repeatedly" and "unmeritorious" is left to the sound discretion of the trial court. (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 971 (*Morton*).) The nature and effect of the filings is more determinative than the number of filings. (See *id*. at pp. 971-972; see also *Goodrich v. Sierra Vista Regional Medical Center* (2016) 246 Cal.App.4th 1260, 1266-1267.) Applicable filings are so frivolous, devoid of merit, or lacking in a reasonable probability of success or excuse, that they harass the adverse party or abuse court processes. (*Morton*, at p. 972.)

A vexatious litigant determination is appealable (*In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 618-619), and we review the trial court's order for abuse of discretion (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1169). Because the trial court is in the best position to consider evidence and hold hearings on whether a litigant is vexatious, we presume the trial court's determination is correct and imply any findings necessary to support that designation. (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 636.)

### B

Marcia Linett (mother), formerly Marcia Webb, sought to dissolve her marriage with father in 2017. Father and mother have two children.

In 2017, father filed a motion in the dissolution action seeking child custody orders. The trial court conducted a four-day trial in 2018 and subsequently issued a detailed order concerning child custody and visitation. The trial court found that father had committed domestic violence against mother and the children; a batterer's treatment program had not been effective for father, who continued to blame others for his conduct; father had violated restraining orders; and father's testimony had been argumentative,

evasive, and untruthful. Among other things, the trial court ordered the following: mother to have sole legal and physical custody of the children; father to participate in alcohol testing; father, mother, and the children to continue with individual counseling; father to have professionally supervised visits with the children; and father to participate in reunification counseling when appropriate. The trial court ordered father to pay for the alcohol testing, supervised visits, and reunification counseling.

Father was represented by counsel at the trial but represented himself for posttrial filings.

C

Because this case involves requests to modify final or permanent orders, we set forth the standards applicable to such requests.

Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interests of the child. (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.) When determining the best interests of the child, relevant factors include the health, safety and welfare of the child, any history of abuse by one parent against the child or the other parent, and the nature and amount of contact with the parents. (*Ibid.*)

Once the trial court has entered a final or permanent custody order, the paramount need for continuity and stability in custody arrangements weigh heavily in favor of maintaining that arrangement. (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) Accordingly, modification of a custody order requires a parent to demonstrate a significant change in circumstances. (*Ibid*; *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996.) But if the requested modification only involves the visitation schedule, the trial court considers the best interests of the children. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1077, 1079-1080.)

3

## D

In February 2019, five months after the trial court issued the child custody and visitation orders, father sought modification of those orders. He asked the trial court for a step-up order moving toward 50 percent custody of his children. He argued such an order would be in the best interests of the children because he and the children had not been able to maintain a consistent relationship. Father also asked for an alternative to supervised visitation that did not cost as much, explaining that he cancelled certain visits because he could not afford them. In addition, father asked for an order allowing the children to participate in reunification counseling. Father said he had been participating in such counseling but the children had not yet been approved to participate. Father submitted a number of documents including a status report from the reunification counselor advising father that reunification sessions with the children would not begin until (1) the children's counselor determined they were ready, and (2) the supervised visitation provider indicated father was able to provide a climate of emotional safety for each child. A letter drafted by the children's counselor less than a week later informed father that the children were not ready for reunification counseling. The children's counselor had been working with the children for that next step. The following month, father filed an amended request for modification of the child custody and visitation orders, indicating that he had resumed supervised visits after he sold certain real property.

Mother opposed father's request to modify the child custody and visitation orders, arguing father's request was legally insufficient because father presented no evidence to establish a change in circumstances. After a hearing, the trial court ruled in favor of mother in connection with father's request for modification because father had not presented evidence of changed circumstances. Shortly thereafter, mother and father stipulated to a judgment of dissolution that included the prior child custody and visitation orders. The stipulated judgment indicated it was intended to be the final, complete, and exclusive agreement of the parties.

Nevertheless, in July 2019, just four months after entry of the stipulated judgment, father again sought modification of child custody and visitation. He asked for joint legal and physical custody, unsupervised visitation, and specification of the reunification counseling required before joint custody would be granted. Father said supervised visits prevented normal activities and "normal" was in the best interests of the children. He indicated there had been four sessions of reunification therapy with the children, and the children were ready to move to the next phase. A status report from the reunification counselor said the younger child was guarded but that he increasingly asserted himself verbally, expressing his preferences and limits even when it meant challenging father. The report said the older child had become vocal about her perceptions and memories that differed from father, but she was not ready to confront sensitive matters.

Mother opposed father's request for modification, arguing among other things that the children had only participated in four reunification counseling sessions with father and there was no indication they were not still afraid of him. Mother claimed father had made further threats in communications to her attorneys.

Father urged the trial court to find a change of circumstances based on the reunification counselor's determination that he had the necessary parenting skills. Father said he completed the alcohol testing program, participated in individual counseling sessions for 28 months, and had a stable home. Father denied domestic violence against mother and regretted spanking his eldest child.

In October 2019, the trial court ruled in favor of mother in connection with father's request for modification, concluding there was no evidence of changed circumstances and father had not rebutted the presumption in Family Code section 3044 that it would be detrimental to the children to grant joint custody to the perpetrator of domestic violence. Among other things, the trial court said that although father had made some progress, such as completing sober living requirements, father still denied domestic violence allegations found true by the court, reunification counseling was not concluded,

5

there was no evidence from the counselor that the children were ready for a modified child custody arrangement, there were problems at the supervised visits and continued restrictions on father, father had not completed an effective 52-week Batterer's Treatment Program in compliance with court order, father continued to show lack of empathy relating to corporal punishment of one of the children, and father had not completed a parenting class after trial.

The trial court said father's continuing requests for modification without changed circumstances could be viewed as frivolous and warned father that he needed to show an actual change in circumstances. The trial court directed father to work with the family law facilitator's office because that office could assist father with when to make a request and what to include in the request.

In February 2020, father again requested modification of the child custody order, claiming he needed "clarification" of the custody orders and modifications that would be "less financially punitive" for him. Contrary to the original custody order, he claimed that mother should pay for reunification counseling until she provided an option for such counseling that would be covered by insurance. He challenged the order of professionally supervised visitation because he was unable to pay. He asked whether he needed to repeat the batterer's intervention program he had already completed, even though the trial court had told him in the prior order that, despite his completion of a batterer's treatment program, it was ineffective and he needed to complete an effective program. Father claimed he consulted a "court facilitator" seeking advice on programs in which he could enroll. But despite the trial court's prior direction to him, father did not indicate that he had consulted with the family law facilitator's office about his latest request for modification of the child custody order, or that he had received assistance with the request.

The trial court denied father's request for modification of the child custody order. Although the trial court noted father had completed batterer's treatment prior to trial, it had already indicated the treatment prior to trial was not sufficient.

Father had also requested modification of the child support order, claiming that his income had decreased since the original support order was entered. The trial court scheduled a hearing to address that separate issue.

In April 2020, mother moved for an order declaring father to be a vexatious litigant within the meaning of section 391, subdivision (b)(3). She also requested that the court impose a prefiling order pursuant to section 391.7, subdivision (a) prohibiting father from filing any document until he obtained approval to do so from the presiding judge. Mother said father's requests had caused the unnecessary expenditure of her time and effort and that she had incurred attorney's fees in excess of $22,000. Although the appellate record indicates father filed a responsive declaration, the document is not part of the record.

After a hearing with multiple witnesses, including mother and father, the trial court declared father a vexatious litigant under section 391, subdivision (b)(3), and imposed a prefiling approval requirement under section 391.7, subdivision (a) prohibiting father from filing any document without approval from the presiding judge. The trial court explained that although father did not act maliciously, he had repeatedly filed the same requests in a short period of time. The trial court said it had explained to father the need for changed circumstances but that did not stop him from bringing a similar motion shortly thereafter. The trial court was concerned that the situation would continue without a vexatious litigant designation and prefiling approval requirement.

## DISCUSSION

Father contends the trial court abused its discretion in declaring him a vexatious litigant within the meaning of section 391, subdivision (b)(3). Although this is a close case, here the trial court did not abuse its discretion. The nature and effect of father's

7

filings are more determinative than the number of filings. (*Morton, supra*, 156 Cal.App.4th at pp. 971-972.) Father made repeated requests within a short period of time for modification of the child custody order. He did so without presenting evidence of significantly changed circumstances sufficient to justify his requests. According to the trial court, father had not yet successfully completed a parenting class or an effective 52-week batterer's treatment program as ordered by the trial court. And although the trial court found that father had committed domestic violence, father made his repeated requests for modification without showing that he could rebut the presumption in Family Code section 3044 that an award of custody to a person who has perpetrated domestic violence is detrimental to the best interests of the children. Moreover, father requested modification after the trial court warned him that he needed to show changed circumstances. And father appears to have disregarded the trial court's direction that he confer with the family law facilitator's office before making another request. His repeated requests unduly burdened the adverse party and abused court processes. (*Morton*, at p. 972.)

Father argues his requests did not seek the same relief. But his requests were filed in close succession, and they all pertained to the same custody order. (*Morton, supra*, 156 Cal.App.4th at pp. 971-972.) Even if father also included unrelated issues in his requests, such as his request to modify child support, father should not be able to repeatedly challenge the same custody order in short succession but avoid vexatious litigant status by adding other items to his requests.

Father argues that as a matter of public policy, we should grant more leeway to family law litigants, and we should limit prefiling approval requirements to circumstances involving "truly egregious behavior." But here such leeway was within the discretion of the trial court. We merely consider whether the trial court's discretion was abused. As we have explained, on this record we find no abuse of discretion.

8

We decline to consider other arguments asserted by father for the first time in his appellant's reply brief, because mother did not have an opportunity to respond to them. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 592.)

DISPOSITION

The trial court's order declaring father a vexatious litigant and imposing a prefiling approval requirement is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)


_____/S/_____
MAURO, Acting P. J.



We concur:



_____/S/_____
RENNER, J.



_____/S/_____
EARL, J.